FIRST STATE BANK OF HUMBIRD, Appellant, vs. Cox,
Respondent.

*March 10—April 5, 1927.*

*Bills and notes: Transfer by indorsement apparently valid: Mis-*
*designation: Holder in due course: Discharge of antecedent*
*debt as consideration: Delivery presumed as to holder in due*
*course.*

1. A note payable to the "West Wisconsin Limestone Company"
   and indorsed "Wisconsin Limestone Company" by the presi-
   dent, or president to be, of the proposed payee corporation,
   which was in fact never incorporated, bore a valid indorse-
   ment under sec. 116.48, Stats., notwithstanding the misdesig-
   nation.  p. 569.

2. In an action by a bank on a note which it credited to the de-
   positor's account, and in which the maker claimed that the
   plaintiff was not a holder in due course, the facts under which
   the bank received the note are *held* not to show suspicious
   circumstances putting the bank on inquiry.  p. 569.

3. A note payable to order must have at least an apparently valid
   indorsement to constitute one a holder in due course, in view
   of sec. 116.22, Stats.  p. 569.

4. The discharge of a pre-existing indebtedness **is a good con-**
   sideration for a note.  p. 570.

5. A *bona fide* holder in due course can recover on a note, though
   it was put in circulation contrary to the order of the maker,
   since a valid delivery is conclusively presumed, under sec.
   116.20, Stats.; and oral testimony as to the conditions of
   delivery of the note is inadmissible as against a *bona fide*
   holder in due course.  p. 571.

APPEAL from a judgment of the circuit court for Trem-
pealeau county: R. S. COWIE, Circuit Judge. *Reversed.*

Action upon a promissory note executed by the defendant
the 27th day of October, 1920, for the sum of $1,000, pay-
able six months after date to the order of the West Wis-
consin Limestone Company, with interest at six per cent.
after maturity. The note was given for the purchase of
stock in the West Wisconsin Limestone Company, which
it was expected would soon be incorporated and begin to

operate a limestone quarry. The note was left by the defendant in the possession of G. W. Filloon, who was selling stock for the West Wisconsin Limestone Company, with the agreement and understanding that it was not to be delivered to the payee or to any other person until said West Wisconsin Limestone Company had been fully incorporated and until it had delivered to the defendant its corporate stock of the par value of $1,000 and had acquired and commenced to operate a limestone quarry plant at Wilson, Wisconsin, and had delivered to the defendant 500 tons of ground limestone f. o. b. cars at Wilson, Wisconsin. The West Wisconsin Limestone Company was never incorporated and its stock was never issued or delivered to the defendant. The company never acquired the limestone quarry or property at Wilson and never operated such plant, and it never delivered or attempted to deliver to the defendant the ground limestone provided for. The note bore the following indorsement: "Wisconsin Limestone Company, by George L. Jacques, President." The plaintiff bank acquired the note under the following circumstances: One George H. Horrell brought it to the bank some time during the month of November, 1920. Mr. Horrell was well known at Humbird and was president of the Pedigreed Swine Association and of the Horrell Land Company. He had two accounts with the bank, one under the name of the Pedigreed Swine Association and the other under the name of the Horrell Land Company. He had no individual account. The Pedigreed Swine Association was indebted to the bank at that time by overdraft of nearly $950. The Horrell Land Company was also indebted to the bank; besides indebtedness by overdraft there were other indebtednesses evidenced by negotiable notes. Mr. Horrell had instructed the cashier of the bank that whenever he deposited money or notes in the bank it could elect to credit it to the Pedigreed Swine Association account or to the Horrell Land Company account.

This note was deposited by Mr. Horrell and the bank credited the Pedigreed Swine Association with the amount. The note was not entered upon the bills receivable ledger until December 31, 1920. The bank first sent the note to the Augusta State Bank at Augusta with a request that it buy the note. It was made payable at that bank, and the plaintiff bank was in need of funds rather than interest-bearing securities and it desired to sell it. The Augusta bank, however, returned the note with the statement that it did not desire to purchase it, and thereupon, and upon the 31st day of December, 1920, the note was entered upon the bills receivable ledger and the Pedigreed Swine Association was given credit for it. Defendant claims that plaintiff was not a holder in due course and therefore not entitled to recover. This was the issue litigated upon the trial. The trial court found that the plaintiff was not a holder in due course and entered judgment dismissing the complaint upon the merits, and the plaintiff appealed.

For the appellant there were briefs by *Rush & Devos* of Neillsville, and oral argument by *A. L. Devos.*

For the respondent there was a brief by *E. M. Bradford* of Augusta and *Linderman, Ramsdell & King* of Eau Claire, and oral argument by *G. O. Linderman.*

Vinje, C. J. The trial court found that plaintiff was not a holder in due course, and probably the basis for such finding was due to the fact that the note was indorsed "Wisconsin Limestone Company" instead of West Wisconsin Limestone Company. The court's finding in that respect was "That said note was indorsed on its back as follows: 'Wisconsin Limestone Company, by George L. Jacques, Pres.,' but the same was never indorsed or delivered by the payee therein named and said note was not complete and regular upon its face when taken by the plaintiff bank."

There is no question but that the note was indorsed by

the West Wisconsin Limestone Company, for the evidence shows without dispute that Jacques was or was to be the president of the West Wisconsin Limestone Company and that his signature was genuine. He had absconded and his testimony was not available. The complaint alleges that the note was duly indorsed and delivered by the payee, and this is not denied by the answer. It alleges only that the payee had no authority to indorse and deliver it, not that it had not done so. At best there was only a misdesignation of the payee, and sec. 116.48, Stats., provides that "Where the name of a payee or indorsee is wrongly designated or misspelled, he may indorse the instrument as therein described, adding, if he thinks fit, his proper signature." Besides, even if the indorsement were held to be defective, the holder could compel a proper indorsement. *Lawless v. State,* 114 Wis. 189, 89 N. W. 891. But we hold the indorsement, having in fact been made by the payee, was a valid indorsement though there was a misdesignation.

Since it is undisputed that the bank at the time it took the note was not aware of the omission of the word "West" on the indorsement and did not discover the fact till its attention was called to it on the trial, it cannot be said to be a suspicious circumstance that should have warned the bank against taking the note. Had the indorsement not in fact been sufficient to pass title it would be different, for a note payable to order must have at least an apparently valid indorsement to constitute one a holder in due course. 5 Uniform Laws Anno. 218 and note. Here the indorsement was valid, though irregular. Even the maker of the note may sign by mark, by abbreviation, by "village" for "city," or by omission of suffix "Jr." 8 Corp. Jur. 108. A note signed "Alexander Whalen" by James Whalen was held collectible against the latter upon proof that James Whalen adopted the name Alexander Whalen in signing the note. *Jewett v. Whalen,* 11 Wis. 124. See, also, sec. 116.22, Stats.

A few other circumstances connected with the bank's acquisition of the note claimed by respondent to be suspicious will be briefly noted. The note was sent to the Augusta State Bank for sale to it but not bought. The note was payable at that bank, and plaintiff's cashier testified it was in need of ready cash and thought the bank where the note was made payable would perhaps purchase it, but it did not. It was entered upon the bills collectible register at the bottom of the page between the two red lines in which totals could be placed and not in the usual place for such entries. The cashier said it was so entered because it was the last entry of the year and he did not want to start a new page. Respondent's claim was that the entry was made much later than the posted date of December 31, 1920. The original bank account of the Pedigreed Swine Association was introduced in evidence and it showed entries as follows:

| Dec. 30. | Check | $175. | Overdraft | $915.28. |
| Dec. 31. | Deposit | $1,000. | Balance | $84.72. |
| Dec. 31. | Check | $220. | Overdraft | $135.28. |

This shows conclusively to our minds that the deposit of the note was made December 31st as claimed by plaintiff. The cashier testified that the deposit of $1,000 on December 31st was the note in question. Horrell, as has been stated, had no individual account at the bank, and when he made deposits the bank was authorized to credit the same to the Pedigreed Swine Association or to the Horrell Land Company, of each of which he was president and practical owner. The discharge of a pre-existing indebtedness was a good consideration for the note. *Knox v. Clifford,* 38 Wis. 651; 5 Uniform Laws Anno. 228.

The fact that the bank paid the full face of a note that was not due for nearly four months and bore no interest till due was claimed by respondent to be a suspicious circumstance. The cashier testified that Horrell was heavily indebted to it in addition to the overdraft, that he was not then considered

solvent, and that it preferred to get the note though it bore no interest.  He knew in a general way that the maker of the note was a business man in Osseo and, so far as he knew, in good financial condition.  No duty devolved upon the bank to make further inquiry as to the solvency of the maker in order to make it a *bona fide* holder on that account.  There is practically no dispute in the evidence, and we conclude that the trial court reached the wrong result more through error of law than of fact and therefore we can correct the error without setting aside any finding of pure fact.  The plaintiff being a *bona fide* holder in due course can recover though the note was first put in circulation contrary to the order of the maker.  Valid delivery is conclusively presumed.  Sec. 116.20; 3 Ruling Case Law, 1013.

The oral testimony as to conditions of delivery was inadmissible as against a *bona fide* holder in due course. *Knox v. Clifford,* 38 Wis. 651.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff according to the demand of the complaint.