No. 30,399.

THE FIRST NATIONAL BANK OF HAYS, *Appellant,* v. BEN H. MENSE, *Appellee.*

(10 P. 2d 19.)

Opinion filed April 9, 1932.

*Floyd A. Sloan, W. Glenn Hamilton,* both of Topeka, and *Albert M. Cole,* of Holton, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by the First National Bank of Hays against Ben H. Mense, upon a promissory note for $1,000 executed on October 5, 1922, in favor of the Anderson Mercantile Company, payable six months after date with interest at eight per cent per annum from date until paid. It was transferred before it was due by an indorsement of the W. O. Anderson Mercantile Company, as security for a loan obtained by that company from plaintiff. An interest payment of $40 was made on the note on April 7, 1923. An action thereon was begun on the 14th of May, 1923. In its petition the note with the indorsements thereon were set out as follows:

"$1,000.00                                    GRINNELL, KAN., Oct. 5, 1922.

Six months after date I promise to pay to the order of the Anderson Merc. Co., one thousand and no/100 dollars at First National Bank, with interest at the rate of 8 per cent per annum from date until paid. Value received.

Rev. stamps 20¢.                                    BEN H. MENSE.

Indorsed on back: W. O. Anderson Merc. Co.—G. H. Benton. Apr. 7, 1923, int. pd. to 4/5/23, $40."

Plaintiff alleges that the note had been transferred by the W. O. Anderson Mercantile Company before the same became due and that it was now the owner and holder of the note and defendant had

failed to make payment of it. In defendant's answer he pleaded first that the note was barred by the statute of limitations. He further answered that an agent of the Anderson Mercantile Company visited him in his home and proposed to sell shares of stock in that company which he said was of the par value of $100 per share; that the company was paying dividends of more than ten per cent on the par value of the stock and was carrying on a profitable business; that it had a warehouse and other mercantile buildings in Hays; that a volume of business had made it necessary for the company to enlarge its buildings; that the business men and banks of Hays were stockholders in the company and that the agent read and showed defendant a number of letters purporting to have been signed by business men of Hays recommending the company, and the agent stated that the statements made in the letters were true. The agent further stated to defendant that the company would make as large a profit as the H. D. Lee Mercantile Company, which was making a profit of about fifty per cent on the par value of its stock. He then alleged that the defendant relied on the statements and representations of the agent, believed them to be true, but that the statements were false and were well known to be false by the agent, and that he signed and delivered the note upon the faith of the statements and a promise made by the agent that he would deliver forthwith five shares of the stock of the company.

He further alleged that the company had at all times since the signing and delivery of the note neglected and refused to deliver the shares of stock or to enter his name upon any of the records of the company as a stockholder. A further answer was that the plaintiff is not the real party in interest and is not the holder and owner of the note sued upon and did not obtain the note in due course from the Anderson Mercantile Company for a valuable consideration before the note became due. That the plaintiff bank was a stockholder in the company and knew when it acquired the note that the company was a bankrupt and insolvent concern, and that the stock was worthless. At the time the note came into the possession of plaintiff, and for a long time prior thereto, it knew or could have known by the exercise of ordinary care and prudence that the company had not delivered to defendant the shares of stock for which the note was given, and knew for some time prior to the delivery of the note sued upon that the agent had been traveling over the county of defendant and a neighboring county, making false and fraudulent

statments to many other farmers for the purpose of obtaining and procuring the notes of said farmers, which were to be placed in the possession of the plaintiff bank which was only a few blocks from the offices and place of business of the company, and that the company was at the times mentioned a depositor and creditor of the plaintiff's bank and knew that the stock was worthless at the time of its purchase and payment by reason of the note.

It was further alleged that the Anderson Mercantile Company and its agents at the time of the execution and delivery of the note and thereafter until the company was declared a bankrupt, in the early part of 1923, were selling and disposing of the company's stock in violation of the blue-sky laws of the state.

It was further alleged that the Anderson Mercantile Company is the real owner of the note sued upon, and by reason of the averments it was alleged that the note was without consideration and void. The reply was a general denial and upon the testimony produced, a verdict for defendant and the following special findings of fact were returned by the jury:

"1. Was the note sued on indorsed and delivered to plaintiff on December 5, 1922, as security for a note executed and delivered to the plaintiff by the W. O. Anderson Mercantile Company? A. Yes.

"2. What amount, if any, remains due and unpaid of the note executed by the W. O. Anderson Mercantile Company to the plaintiff for which the note sued on is held by the bank as security? A. $594.57 with interest from date of note.

"3. Does the evidence prove that the parties to whom defendant delivered said note made false or fraudulent statements to the defendant by which he was induced to sign said note? A. Yes.

"4. If you answer the preceding question in the affirmative, state in substance what false and fraudulent representations were so made to defendant, which induced him to sign said note. A. Defendant was promised certificate of stock in Anderson Mercantile Company, which he never received."

While there were many charges that false representations were made by the agent of the W. O. Anderson Mercantile Company which induced the execution of the note by the defendant, it will be observed that the jury found that the only false representations made to defendant which led him to sign the note were that the company promised to deliver a certificate of stock, which was not done. The plaintiff complains of errors in the admission of evidence, of instructions given and refused, refusal to render judgment for plaintiff on the special findings, and in refusing a motion for a new trial.

No brief in behalf of defendant has been filed in this court, nor has any appearance been made for him.

The first error assigned by plaintiff is the admission in evidence of a representation by the agent of the company that the stock of the company would ultimately pay for itself. The objection was that no such representation was pleaded by defendant, and further that if any such representation had been made it did not constitute a defense since it was a promise looking to the future and could not be relied on as a ground of fraud. Both objections were good. In *Cook v. Williams,* 81 Kan. 438, 105 Pac. 1116, it was decided that:

"One who pleaded certain alleged fraudulent acts as a defense was bound by his pleading and could not upon the trial avail himself of other facts not pleaded." (Syl. ¶ 1.)

In respect to the fraudulent representations it has been held that to constitute fraud the representations must relate to present or a past state of facts. In *Kiser v. Richardson,* 91 Kan. 812, 139 Pac. 373, it was said:

"The rule that false representations in order to be fraudulent must relate to a present or past state of facts, and that no action will lie to recover damages as for deceit in the failure to perform a promise looking to the future," etc. (Syl.)

In *Federal Agency Investment Co. v. Holm,* 123 Kan. 82, 254 Pac. 391, where the .defendant contended that the representation that shares of stock would be paid for within five years from dividends accruing from the policy was a representation which, if false, constituted fraud, it was said:

"We are of the opinion that such representation was not one of past or existing facts. False representations, in order to be fraudulent, must relate to a present or past state of facts. No action will lie to recover damages as for deceit in the failure to perform a promise looking to the future." (p. 86.)

Complaint is made of an instruction given to the jury. It was that:

"The note sued on and the indorsement thereon to plaintiff do not constitute the note a negotiable instrument passing title to the plaintiff free of all defenses that might be made against it. The defendant is entitled to all the defenses to the note in the hands of plaintiff that might be made to said note if it had never been transferred or delivered to plaintiff; that is, to all the defenses that he might make to said note if there had been no transfer and if the original payee were the plaintiff in this action."

On its face the note already set forth is negotiable in form and has all the words and characteristics of negotiability as prescribed

in the negotiable-instruments act. (R. S. 52-201.) It was transferred to the bank before it was due and the bank then became a holder in due course. The feature or ground which might destroy negotiability as a matter of law is not suggested by the court, nor do we find it in the record of the case. Counsel for plaintiff suggests that the court appeared to have the notion the fact that it was made payable to the plaintiff bank affected its negotiability. The statute cited which provides the requirements of an instrument in order to make it negotiable, does not provide that place of payment is an essential. Such a recital is surplusage so far as negotiability is concerned. It has been held that a blank left for inserting place of payment which was not filled out, did not render the note nonnegotiable. (*Witty v. Michigan Mutual Life Ins. Co.*, 123 Ind. 411.)

It is also suggested that the court appeared to hold to the theory that there was a variance between the payee named in the note and that of the indorser which operated to destroy negotiability. The note was made payable to Anderson Mercantile Company, and it was indorsed, W. O. Anderson Mercantile Co., G. H. Benton. G. H. Benton was the president and general manager of the company. It appears that an application for a loan was made to the bank by the mercantile company and the note in question was transferred to the bank as security for the note of the mercantile company. The mere omission of a word in a name of a corporation in an indorsement does not prevent an indorsee from being a *bona fide* holder of the note or necessarily destroy its negotiability. The statute provides:

"Where the name of a payee or indorsee is wrongly designated or misspelled, he may indorse the instrument as therein described, adding, if he think fit, his proper signature." (R. S. 52-414.)

The statute itself contemplates a mistake may be made in describing the payee or the indorsee and provides that either may at his option indorse it as previously described or by the correct signature. In *Mann v. National Bank*, 34 Kan. 746, 10 Pac. 150, it was said:

"A negotiable note executed in terms to 'A. W., President,' A. W. being the president of the Champion Machine Company, but intended to be executed to and to belong to the Champion Machine Company, and it did in fact belong to such company, and such note is afterward, but before maturity, sold to an innocent purchaser and indorsed by A. W. to said purchaser in the following words: 'The Champion Machine Company, by A. W., president,' such

indorsement will transfer the note, free from all equities or infirmities of which the purchaser had no notice." (Syl. ¶2.)

In *First Nat. Bank v. McNairy*, 122 Minn. 215, where a note was made payable to Northland Motor Company, and indorsed before maturity by Northland Motor Car Company, the true name of the company, it appeared that one defense of the defendant was that false representations had been made which induced the execution of the note, and further that the variance mentioned between the names of the payee and indorser invalidated the indorsement and did not operate to transfer title, but it was held that the omission of the word "car" was not fatal to a valid indorsement. In the course of the opinion it was said:

"We, however, do not believe the omission of the word 'car' in the name of the payee in the note destroys the validity of the indorsement made under its true name. It is well known that corporations or trading concerns have names more or less descriptive of the business and composed of several words. Frequently, in everyday business use, the name is contracted and a word left out. It can hardly be said that an omission of the word 'car' under the circumstances disclosed in this case is unusual or out of the ordinary so as to deprive plaintiff of being a *bona fide* holder." (p. 219. See, also, *First National Bank v. Cox*, 192 Wis. 566.)

In his answer defendant raised no question as to the identity of the note or that the Anderson Mercantile Company and the W. O. Anderson Mercantile Company described the same corporation. The W. O. Anderson Mercantile Company had possession of the note and defendant recognized that it had been transferred by an indorsement, but contended that fraudulent representations had been made to induce the execution of the note. There is nothing in the case to show that the bank had any knowledge of the representations made in the sale of the stock for which the note was executed. On the contrary, there is direct testimony of the cashier that he had no knowledge of the conditions under which the note was executed nor of any statements that were made to the defendant at the time it was executed. The testimony of the president of the bank was to the same effect, and further, that neither of them ever owned any stock in the W. O. Anderson Mercantile Company.

The jury found that of the many charges of fraud the only one that could be attributed to the plaintiff was the promise to deliver a certificate of stock to the defendant. That finding acquits the plaintiff and its indorser of every other allegation of fraud and excludes them from further consideration in the case. (*Stock v. Scott*,

132 Kan. 300, 295 Pac. 638.) The fraud found was no more than a promise looking toward the future, and under authorities herein cited cannot be regarded as actionable fraud. The amount due on the note was not in fact in dispute, and the jury in answer to a specific question found that the amount due on the note given to the bank by the W. O. Anderson Mercantile Company, for which the note in suit was transferred to plaintiff, as security, is $594.57 with interest from the date of that note. That being determined, plaintiff's motion for judgment on the evidence and findings should have been sustained.

For the errors mentioned, the judgment of the district court is reversed with directions to enter judgment for plaintiff in the sum of $594.57 together with interest thereon from the date of the note executed by the W. O. Anderson Mercantile Company.

SLOAN, J., not sitting.