No. 35,178

BUDD SMITH, *Appellee,* v. QUIVIRA LAND COMPANY, *Appellant.*

(113 P. 2d 1077)

Opinion filed June 7, 1941.

*Blake A. Williamson, James K. Cubbison, Lee Vaughan, Jr.,* all of Kansas City, *Melville W. Borders, Wilfred Wimmell, Robert B. McCreight* and *Richard P. Brous,* all of Kansas City, Mo., for the appellant.

*David F. Carson, David W. Carson,* both of Kansas City, and *Glen A. Thomas,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Hoch, J.: The Quivira Land Company (formerly the Quivira Development Company) operating a homesite and recreational community center in Wyandotte county appeals from a judgment for damages for conversion of a boat and for recovery of the amount paid by the owner of the boat for a membership certificate.

The principal questions are whether the only recourse the company had to enforce compliance with its rules and regulations was to cancel the certificate of membership and refund the amount paid for it; whether answers of the jury to special questions are supported by substantial evidence; whether the answers are inconsistent with a finding of conversion; and whether the defendant was entitled to judgment notwithstanding the verdict.

The petition alleged two causes of action. The first was that the defendant, by its general manager, had wrongfully taken possession of a boat and its contents, belonging to the plaintiff, had "secreted and converted it" and refused to deliver it upon demand and refused to inform the plaintiff of its whereabouts. The value of the boat and contents was alleged to be $500, for which amount judgment was asked as actual damages. Additional and punitive damages in the sum of $1,500 was asked on the ground that the wrongful act of conversion was malicious, oppressive and actuated by spite.

For a second cause of action plaintiff alleged, in substance, that the defendant company owns and operates a lake project known as Quivira lake, around which homesites are located, and that the company also issues and sells "participation certificates" to persons who do not reside at the lake but desire to use the lake and enjoy the other recreational facilities provided; that on August 1, 1931, the defendant issued one of such certificates to plaintiff for which he paid $600; that as a holder of such certificate he was entitled to use the lake for boating and fishing, upon the payment of an annual maintenance fee of $25 which he had paid in advance each year; that the company was entitled to make rules and regulations governing the use of its facilities, but that it could only enforce observance of such rules and regulations by canceling the certificate and refunding the amount paid therefor; that by "confiscating" his boat and contents, concealing it and refusing to surrender it—as alleged in the first cause of action—the defendant had deprived him of his sole means of using the lake for boating and fishing, and had

thereby, in effect, canceled his certificate and rendered itself liable to refund the $600 he had paid for it. The participation certificate and a certain letter written by the manager on July 28, 1938—to both of which reference will later be made—were made a part of the petition.

The answer admitted that the plaintiff was the holder of the certificate, that he was entitled to use of the lake, subject to the conditions specified in the certificate and in the rules and regulations; that the letter of July 28, 1938, had been sent; and that the plaintiff's boat was removed from the lake but on a different date than alleged. The defendant denied that it had wrongfully taken the boat into possession or had spirited it away, secreted it, converted it, or refused to surrender it; denied that the boat contained the equipment or contents as alleged in the petition; and denied that it had at any time asserted any claim of ownership or right to use plaintiff's boat or its alleged contents. The answer further alleged that the boat was removed from the lake on account of violation of the boating and fishing rules by the plaintiff; that the plaintiff was told of the whereabouts of the boat when he first appeared at the lake on the morning following the removal, and told that the defendant made no claim to ownership or use of the boat, and that on August 16, 1938, he was informed by letter—to which reference will later be made—that he could take the boat and do with it as he pleased, except that "he would not be permitted to use the same on said lake in violation of said rules." The defendant further admitted in the answer that the company was entitled to cancel the certificate for failure to observe the rules, but denied that it had ever canceled it or attempted to do so. It was further alleged in the answer that "all during the year immediately prior to said happening complained of" the plaintiff had violated the rules as follows:

"(a) By inviting from one to three persons as his guests, on numerous occasions, to fish at said lake. .

"(b) By exceeding the bag limit for any one day and exceeding the bag limit for any one week, as prescribed by said rules to be caught by any participation certificate holder's entire family.

"(c) By using more than two fishing lines in the water at one time."

Jury trial was had and a verdict rendered for the plaintiff on both causes. On the first cause for conversion of the boat and contents the jury awarded $500 as actual damages and $500 as punitive damages. On the second cause it awarded the full amount of $600 as prayed for. An election was granted to the plaintiff by the trial

court to accept a reduction on the first cause of $200 in the verdict for actual damages and $300 for punitive damages, leaving a total verdict on the first cause of $500 and on the two causes of $1,100. The modification was accepted and judgment rendered accordingly.

The jury answered special questions as follows:

"1. Was plaintiff advised by defendant company in a letter dated August 16, 1938, that his boat was available to do with as he saw fit, except that he should not violate the terms of his certificate or the rules of the company, through the use of his boat? A. Yes; by lawyer, by letter of August 16, 1938.

"2. Did plaintiff violate any of the rules at any time during the year prior to the time when defendant company removed his boat from the lake? A. Yes; wholesale violation; everybody else did.

"3. Did plaintiff, at any time during the year prior to the time when his boat was removed from the lake, take anyone outside of his wife and children with him and fish on Quivira lake, who were not lot owners or holders of participation certificates? A. Yes.

"4. If you find for the plaintiff state: (a) How much you allow on first cause of action as actual damages? (b) How much, if any, do you allow on first cause of action as punitive damages? A. (a) $500 for boat and contents. (b) $500 for punitive damages.

"5. State if defendant company ever refused to return plaintiff's boat to him? A. Yes; in the letter of July 28, 1938.

"6. If you answer question 5 in the affirmative, state: (a) When? (b) Where? A. (a) July 28, 1938. (b) In the letter of James H. Proudfit, dated July 28, 1938.

"7. Did Mr. Proudfit, in taking the boat off of said Quivira lake, intend to convert the same to the permanent use of the defendant? A. Yes; to keep Mr. Smith off of lake until they had an understanding.

"8. Did Mr. Proudfit exercise dominion over said boat to the exclusion of the rights of plaintiff? A. Yes.

"9. Did Mr. Proudfit intend, in removing Budd Smith's boat from said lake, to cancel said Budd Smith's participation certificate? A. Yes.

"10. Has Mr. Proudfit or any official of the Quivira Land Company denied Mr. Smith, his wife, or members of his family under 25 years of age, any rights at any time that they lawfully were entitled to under their participation certificate? A. Yes; by removing the boat and forbidding him the use of the boat to fish until they had had an understanding.

"11. Did Mr. Proudfit and the Quivira Lake Company intend to keep Budd Smith from boating or fishing out of a boat on Lake Quivira? A. Yes.

"12. Did James Proudfit and the Quivira Land Company intend to keep Budd Smith from bringing guests onto Quivira property? A. Yes.

"13. Did James Proudfit and the Quivira Land Company take Budd Smith's boat away from the lake to defendant's barn or shop? A. Yes.

"14. Would James Proudfit and Quivira Land Company allow Budd Smith to use his boat on Lake Quivira after removing it July 28, 1938? A. No, not unitl they had an understanding.

"15. After removing the boat from the lake, did James Proudfit and

Quivira Land Company ever intend to let him use his boat on Quivira lake until he and Proudfit had an understanding about fishing rules? A. No.

"16. Did James Proudfit and Quivira Land Company ever intend to let Budd Smith bring guests onto Quivira grounds until he and Proudfit had an understanding about fishing rules? A. No."

Before considering the issues here presented for review, it will be helpful to set out the pertinent provisions of the rules and regulations in issue, and the letters, or portions thereof, hereinbefore referred to.

From the rules and regulations:

"If issued upon a deferred payment basis, this certificate will be in full effect upon issuance. In case of failure to pay any deferred payment within thirty days after due date thereof, this certificate may be canceled by the Quivira Development Company, and any and all payments theretofore made may be retained by said company as liquidated damages, and the holder hereof shall not be entitled to any of the privileges enumerated above.

"The Quivira Development Company may from time to time make rules governing the use of the facilities mentioned above, and limiting the number of participation certificates that may be outstanding at any one time. Failure on the part of the holder hereof to observe such rules will entitle said company to cancel this certificate upon repayment of the amount theretofore paid, without interest."

The letter of James H. Proudfit dated July 28, 1938:

THE QUIVIRA LAND COMPANY

July 28, 1938

*Mr. Budd Smith, 411 East 69th Terrace,*
    *Kansas City, Missouri.*

DEAR BUDD—It is necessary that we take up with you again the matter of your breaking our fishing rules.

We observed last night that you had a guest fishing with you that is not a member of Quivira and, of course, you know that this is against our rules. This same thing has happened many, many times and we have decided to put a stop to it. You have thumbed your nose at me long enough, Budd, and we are going to determine right now whether you are going to abide by your fishing rules or the Quivira fishing rules.

I have ordered your boat removed from the waters of Lake Quivira and it is going to stay off of the lake until you and I have an understanding of the observance of our rules. I have also issued orders that we will not allow anyone to enter the Quivira property as your guest until we have this understanding.

You have been a consistent and persistent violator of our rules ever since I have been out here and I have waited a long time to bring this issue to a head.

I would be glad to talk to you at any time you say but I will promise you one thing and that is that our rules will be obeyed by you from now on.

Portions of the letter of August 16, 1938:

BORDERS, BORDERS & WARRICK

August 16, 1938

*Mr. Glenn A. Thomas, 21 West 10th Street,*
  *Kansas City, Missouri.*

DEAR SIR—Further answering your letter of the 4th, addressed to The Quivira Land Company, please be advised that we have made inquiry concerning the matter and have the following comments to make.

We fail to see any provision in the participating certificate held by Mr. Smith which constitutes the removal of Mr. Smith's boat from the lake an election to cancel his certificate. Obviously, it is not the intent of the language of the participation certificate that refusal of the privileges for violation of either the provisions of the certificate or of the rules of the company necessarily constitutes a cancellation of the certificate and an obligation on the part of the company to repay the amount which Mr. Smith has heretofore paid. Such a construction would necessarily mean that any certificate holder could merely violate the provisions of the certificate or the rules of the company at will and as a direct result force the company either to disregard such violation or to repay the amount theretofore paid. We would be glad to have you point out to us any provision in the certificate which would entitle Mr. Smith to a return of his money.

The company desires to make it perfectly clear that there has been no cancellation of your client's certificate.

On the other hand, the company feels that it is entirely justified in the action which it has taken. . . .

Mr. Smith has repeatedly violated the terms of the foregoing paragraph, in spite of frequent warnings. He is not entitled to the privileges of Quivira excepting in strict accord with the provisions of his contract. He cannot complain that certain privileges are denied him.

. . . All of these rules have been repeatedly violated by Mr. Smith. Having consented that the company may make rules and having agreed to abide by such rules, and having violated such rules, Mr. Smith is not privileged to force a financial obligation on the company by reason of his own actions.

The company has not confiscated Mr. Smith's boat or contents thereof. His boat has not been damaged, and, in fact, Mr. Smith has known where his boat was from the day of the removal from the lake and has been told that the company claims no ownership over or in the boat, and that it is his to do with as he sees fit, excepting that he may not violate the terms of his certificate or the rules of the company through the use of his boat. There has been no conversion of this boat or its contents.

We therefore feel that we must reject your claim in full.

We shall first consider the second cause, in which appellee sought refund of the $600 which he had paid for his membership certificate seven or eight years prior thereto. Printed on the back side of the certificate was a statement of the various privileges to which the

holder and his wife, unmarried daughters and sons under twenty-five years of age were entitled—use of the clubhouse, beaches, lake for boating, fishing and bathing, roads, parks, playgrounds, drives, walks and bridle paths; also, statement of the dues to be paid and the use to be made of the funds created from such dues; a provision that delinquency in payment of dues forfeits the right to the privileges enumerated; a provision that the company may make rules and regulations governing the use of the facilities; a provision that the certificate may be canceled and the amounts already paid retained upon failure to make any deferred payment on the certificate, within thirty days after such payment is due; a provision that the company will be entitled to cancel the certificate upon repayment of the amount theretofore paid if the holder fails to observe the rules. It is the theory of the appellee that inasmuch as the certificate provides that it may be canceled upon return of the amount paid, for violation of the rules, such cancellation is the only remedy, the only means which the company may employ to enforce its rules; that by removing his boat from the lake for violation of the rules and thereby depriving him of his means of enjoying the privileges of the lake, the appellant in effect undertook to cancel his certificate as provided in the contract and is thereby liable for refund of the $600. Appellant contends that violation of the rules merely "entitled" or gave an option to cancel the certificate and refund the amount paid; that in no way did it indicate an intention to cancel the certificate and that it had the right to employ any reasonable means to enforce the rules and regulations.

It is true, as urged by appellee, that the specification in a contract of a particular remedy to be used in case of default may operate to exclude all other remedies. But that depends both upon the specific provisions relating to remedy and upon the intent as disclosed by a reasonable construction of the whole contract. The instant contract provides that violation of the rules "will entitle the company" to cancel the certificate and make refund. Appellee argues that if the rules are violated and the company does not choose to cancel the certificate as it is entitled to do, there is nothing it can do to enforce the rules—with the result that the holder could continue to violate them without restraint. Under that construction one who has held stock or a certificate in such a company or club and enjoyed its privileges for many years could virtually force the company to refund what he had paid for his stock or certificate—no

matter how much larger that amount may have been than the current value of the stock—by the simple expedient of violating the rules so persistently and flagrantly that his membership could not longer be tolerated. We find no law which compels such an unreasonable construction. The cases cited by parties largely turn upon the specific language used in the contract or upon the particular facts and circumstances as indicative of intention, and an analysis of them would merely extend this opinion without being of material help on the instant issue. If the rule contended for by the appellee has any application at all to the instant contract it is that the provisions for canceling certificates for failure to make deferred payments or for failure to observe the rules preclude the company from canceling for any other reason. But that issue is not here involved. The company had a right to make rules and regulations and appellee concedes that in the absence of the provision relating to cancellation, it would have had the right to employ any reasonable means to enforce them.

Did appellant adequately raise this issue of interpretation of the contract so that it is here for review? Whether the issue was raised by the demurrer to the petition may not be entirely clear. In any event, appellant clearly raised it by a requested instruction, the pertinent portions of which were as follows:

"Nor is plaintiff entitled to a cancellation of said participation certificate and the return of any money paid therefor merely because his said boat was removed from said lake in the enforcement of rules or provisions of the participating certificate, if you so find.

"You are further instructed if the plaintiff in this case violated the terms of his agreement with the Quivira Land Company, as contained in said participation agreement, or under the rules promulgated governing the fishing at Quivira lake, by taking persons to fish, other than his wife, unmarried daughters and sons, under 25 years of age, that such acts constitute a violation of the contract and plaintiff cannot use this violation to effect a cancellation of such Quivira company of his participation certificate nor recover $600 for his certificate."

This instruction was refused and no comparable one was given. Appellant's contention on this point was again covered, in substance, in its motion for judgment upon the answers to special questions notwithstanding the general verdict, the pertinent portions thereof being as follows:

"For the further reason that said jury construed the act of Mr. Proudfit to prevent a further violation of the rules as a cancellation of said certificate which was not true in fact or in law."

We now consider the first cause—conversion of the boat and contents. Consideration of this cause takes us at once to an examination of the jury's answers to special questions. Questions 2 and 3 were as follows:

"2. Did plaintiff violate any of the rules at any time during the year prior to the time when defendant company removed his boat from the lake? A. Yes; wholesale violation; everybody else did.

"3. Did plaintiff, at any time during the year prior to the time when his boat was removed from the lake, take anyone outside of his wife and children with him and fish on Quivira lake, who were not lot owners or holders of participation certificates? A. Yes."

The added words, "everybody else did," in answer to question 2 were not responsive and can be given no effect. The fact that others may have violated the rules is, of course, no defense. Moreover, what steps, if any, may have been taken to prevent violations by others is not a part of this record nor within any issue here.

It clearly appears, from the jury's answers, that the manager removed appellee's boat from the lake for the purpose of bringing about an "understanding" with him. (See answers to questions 7, 10, 14, 15 and 16, supra.) What sort of an "understanding"? After a careful examination of the whole record we think there is only one answer which could be made to that question. It was an "understanding" that he would cease violating the rules. The evidence supports no other theory whatever as to the intention of the manager in removing the boat from the lake.

Now let us note the answers to questions 5 and 6, on the proposition of whether the manager, having removed the boat from the lake in order to enforce the rules, at any time refused to let him have the boat. The answers are as follows:

"5. State if defendant company ever refused to return plaintiff's boat to him? A. Yes, in the letter of July 28, 1938.

"6. If you answer question 5 in the affirmative, state: (a) When? (b) Where? A. (a) July 28, 1938. (b) In the letter of James H. Proudfit dated July 28, 1938."

An examination of the letter of July 28, 1938, shown above, discloses that it wholly fails to support the jury's answers. There is not a line or an implication in the letter to the effect that appellee could not have his boat. The only sentence with reference to the matter is, "I have ordered your boat removed from the waters of Lake Quivira and it is going to stay off of the lake until you and I have an understanding of the observance of our rules." Keeping

the boat off the lake is something entirely different from refusing to let appellee have the boat. Furthermore, in answer to question 1 above, the jury found that by letter of August 16, 1938, the appellant specifically advised the appellee that he could do with the boat as he saw fit except to use it on the lake in violation of the rules.

Having been asked the specific question as to when, if ever, the appellant refused possession of the boat to appellee, the jury's answers absolved appellant from other alleged acts or declarations of refusal to return the boat to appellee. (*Walls v. Consolidated Gas Utilities Corp.*, 150 Kan. 919, 926, 96 P. 2d 656; *First National Bank v. Mense*, 135 Kan. 143, 149-150, 10 P. 2d 19; *Stock v. Scott*, 132 Kan. 300, 302-303, 295 Pac. 638.) Except for the testimony of appellee, the testimony was that there was no refusal to let appellee have his boat. But it is not our function to pass upon conflicting testimony. The jury, however, was not obliged to give credence to any particular testimony and it chose to base its findings of refusal upon the letter of July 28 and not upon appellee's testimony as to statements made to him by the manager. The letter of July 28, being a written document available for our examination, the jury's answers 5 and 6, based on its contents, are within our review. Having determined here that the answers cannot stand, the conclusion necessarily follows that under the findings of the jury the appellant at no time refused to return the boat. As to the answer to question 8, it must be said that it either falls, along with the answers to 5 and 6, or is wholly unsupported by any evidence. The answers to questions 9, 10, 11, 14 and 15, do not bear on the issue of conversion of the boat, but upon the use of the boat on the lake. In cause one damages are not sought for keeping the boat off the lake, but for the value of the boat and contents on account of "converting" it. The answers, individually and as a whole, are inconsistent with and cannot be harmonized with a finding of conversion of the boat inhering in the general verdict. It follows, under the rule frequently stated, that the general verdict must be set aside as to the first cause of action. (See G. S. 1935, 60-2918, and cases there annotated; *Clark v. Missouri Pac. Rld. Co.*, 134 Kan. 769, 8 P. 2d 359; *Curry v. Wichita Railroad & Light Co.*, 128 Kan. 537, 278 Pac. 749, and many other cases readily located in the digests.)

In the second cause of action the allegations as to conversion of the boat were repeated and made the basis of the contention that

appellee had in that manner been deprived of the use of the lake, and that thereby the company had in effect canceled the certificate and made itself liable for refund of the amount paid for it. Accordingly, a finding that there had been conversion of the boat was also essential to validity of the verdict as to the second cause of action. The effect of the answers being to negative any finding of conversion, it follows—in addition to what was said earlier herein as to the second cause of action—that the verdict must be set aside as to both causes of action.

The judgment is reversed with directions to enter judgment for the defendant.