No. 36,402

Rosa Glenn, *Appellee,* v. Montgomery Ward and Company, *Appellant.*

(163 P. 2d 427)

Opinion filed November 10, 1945.

*Douglas Stripp,* of Kansas City, Mo., argued the cause and *Blake A. Williamson, James K. Cubbison* and *Lee Vaughan,* all of Kansas City, were on the briefs for the appellant; *I. N. Watson, Henry N. Ess, P. C. Groner, Paul V. Barnett* and *Charles E. Whittaker,* all of Kansas City, Mo., of counsel.

*David F. Carson* and *David W. Carson,* both of Kansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries alleged to have resulted from defendant's negligence. The jury answered special questions and returned a verdict for plaintiff for $500, upon which judgment was rendered. Defendant has appealed and contends (1) that its demurrer to plaintiff's evidence should have been sustained, and (2) that its motion for judgment on the answers to the special questions notwithstanding the general verdict should have been sustained.

The locale of plaintiff's injury may be described as follows: The defendant operates a large retail mercantile store at the northwest corner of Minnesota avenue and Seventh street in Kansas City. The main building is a three-story brick facing south on Minnesota avenue with a width of 100 feet. The ground occupied by defendant extends through to State street on the north. On the northwest corner of Seventh and State streets there is a filling station, and directly west of it defendant has the use of a vacant lot where customers of the store may park their automobiles. The main building extends from Minnesota avenue north to about eighty feet of the north end of the lot. At the north end of the main building defendant has a one-story brick building about twenty-six feet wide and fifty feet long extending along Seventh street, which it uses as a place to service equipment it sells. This has large double doors, like those used on a garage, both on the east and west sides. These are about eighteen feet wide. Across the north end of the main building is a loading dock about thirteen feet wide and perhaps three feet high. The area of the lots north of the loading dock and west of its service room is a paved court extending north about seventy feet to State street. Along the west of this paved court is a

cement wall about three feet high. There is a driveway entrance into this court from the north on State street. The principal purpose of the court and loading dock is for trucks to drive in with merchandise to be unloaded on the dock, or for the loading of merchandise into trucks or cars to be sent away. Some customers of the store use the paved court, parking their cars on the west facing the wall, or if there is room on the south of the court facing the loading dock. At the west end of the loading dock there are steps from the dock down to the paved court. The loading dock has a canopy over it, and perhaps ten feet above it, as a protection from rain or snow, and about the center of this canopy there is a row of lights on the underside of it extending along the canopy from east to west. These are equipped with 100-watt electric light bulbs. On the parking north of the paved court and directly west of the driveway into it there is a street light, and across State street at the filling station there are floodlights. Good lights are used in the service station on the east side of the court, and when the west doors of the service station are open the lights aid in lighting up the court. When cars are parked on the paved court up next to the loading dock the lights in the ceiling at the loading dock cast some shadow back or north of the cars parked against the loading dock.

In her petition plaintiff described the location of the premises and alleged that on April 20, 1940, about eight o'clock p. m., just after dark, she was a customer of defendant's store and parked her car at the rear thereof and entered the store; "that while plaintiff was in said store defendant sold pipes to a customer [whose name plaintiff did not know] who had his car parked immediately back of said loading dock or in said parking space, controlled, owned and operated by the defendant as aforesaid, and that said defendant caused, permitted and allowed said customer to pile the pipes sold to him underneath his car, which was a truck. That these pipes were piled or swung from the truck four to six inches above the ground and that said truck was not there when plaintiff entered said building and no pipes were there. That she was in the store about three minutes to bring back her purchases and put them in her car when she tripped over the pipes" and fell, causing her injuries, which were described. She alleged defendant was negligent in that it caused, permitted and allowed its customers, and particularly the one in question, to swing or pile the pipes beneath the truck, parked as aforesaid, and so close to the surface of the ground as to be dan-

gerous to customers of defendant passing to and fro back of the parking space, and neglected to in any manner light the space or to warn persons in the use thereof of any dangers from the use of the parking space, and neglected to in any manner warn persons of any danger from passing to and fro across the same, and neglected to provide a safe exit for plaintiff from the store and a safe passage to her car parked in the rear thereof. Defendant's answer contained a general denial and allegations to the effect that if plaintiff sustained any injury at the time and place in question the same resulted from her own lack of due care. At the beginning of the trial it was agreed between the parties that a reply had been or would be filed. The record does not show that a reply was filed.

Plaintiff testified that she was a resident of Kansas City and a customer of defendant and gave a general description of its premises. She had purchased from defendant merchandise which needed altering and went to get it the evening of April 20, 1940, about eight o'clock, just after darkness had fallen. She drove her car onto the parking court from State street and parked it facing the loading dock near the east end of it. Other cars were parked along the dock west of hers, and there were other cars within the paved court. She got out of her car, walked west behind the cars parked along the loading dock, and up the steps onto the loading dock, which was lighted by the lights from the overhead canopy, and into the store. She got her merchandise, which was ready for her, and went back to her car, following the route she had taken to go into the store. When she reached her car she found she did not have her car keys, and remembered she had laid them on the table where she had picked up her merchandise in the store. She promptly went back into the store along the same route she went the first time, found her keys where she had remembered leaving them, and started back to her car along the same route she had traveled previously. As she was walking behind the cars parked facing the loading dock she fell forward. She used the term "sprawled" in describing the way she fell. She was severely shaken up; her hands and one knee appear to have struck the pavement first. The hands were bruised, but became normal soon. One knee was cut, bled profusely, and still troubled her at the time of the trial. Since, if plaintiff is entitled to recover any sum, appellant does not complain of the amount of the verdict, we need not detail more fully her testimony, nor that of

her physician, pertaining to her injuries. After she fell she sat up on the pavement and looking west saw that she had tripped over a roll of pipe. It looked to her like a bundle three to five inches in diameter of one-half inch water pipe. The pipes had been tied under a car in such a way that they were swung on the axle or some other under part of the car and stuck out four or five feet back of the body of the car. She testified that when she came back the second time, passing the same place she had passed three times, the roll of pipe was there. "It got there in that brief interval of time I was getting the keys. I do not have an idea how they got there." She further testified that as she walked back the last time she "didn't look at the ground." While sitting on the ground as much as five or six feet from the pipe she had no trouble seeing it. She did not remember whether the street light in the parking just west of where she drove into the paved court was burning, or whether the large doors of the service station which opened into the paved court were open, or whether there were lights in the service station, and further testified that it was dark along where she was walking; that the only lights she remembers seeing were those from the canopy over the loading dock. Plaintiff called no other witness to give testimony as to how her injuries occurred.

Defendant's demurrer to plaintiff's evidence was overruled and defendant offered the testimony of witnesses who saw plaintiff just after she fell and who had no difficulty in seeing the pipe sticking out back of the car and whose testimony tended to show that the place where she fell was lighted up much better than her testimony indicated. But that presented only a conflict of evidence. There was no testimony offered by defendant tending to show to whose car the pipe was attached, or how or when it got there, or that defendant or any of its employees knew the pipe was there or had anything to do with its being placed there.

The jury answered special questions as follows:

"1. When plaintiff returned to her automobile and learned that she had left her keys in the Montgomery Ward building, state approximately how long thereafter, in minutes, it took her to look for her keys and return to the place where she fell. A. Five minutes.

"2. State whether plaintiff, immediately prior to her fall, could have seen the pipes had she looked. A. Yes. . . .

"4. If you find for the plaintiff, state what act or acts of negligence, if any, defendant was guilty of. A. Improper lighting.

"5. State how far away a person in the exercise of ordinary care could have seen the pipes at the time and place in question and under the circumstances there existing.  A.  5 or 6 feet."

Defendant's motion for judgment upon the answers to the special questions notwithstanding the general verdict was overruled.

We turn now to the legal questions argued.  It is clear to us that the demurrer to plaintiff's evidence should have been sustained.  It was alleged in plaintiff's petition that defendant sold to a customer the pipes over which plaintiff fell and caused, permitted and allowed the customer to pile the pipes underneath his car.  There is no evidence to sustain any of these allegations.  The owner of the car under which the pipes were placed was not identified by name or otherwise.  Neither was there any identity of the persons who placed the pipes where they were when plaintiff tripped on them. Plaintiff's evidence discloses that the pipes had not been there long enough to give defendant constructive notice of their presence.  It was alleged, and plaintiff's testimony was to the effect, that the pipes got in that position within the brief space of time that she took to go into the store to get her keys—a period estimated by her as two or three minutes.  Plaintiff was not injured by any defect in the pavement or the steps, or by anything shown by evidence to have been in the custody or control of defendant.  Defendant was not an insurer of plaintiff's safety.  It did owe her the duty of providing a reasonably safe place for her to go from the car to the store and return.  That such a place was furnished is demonstrated by the fact that plaintiff had made three trips over the same route without harm.

We reach the same ultimate result in the case if we consider defendant's motion for judgment on the answers to the special questions notwithstanding the general verdict.  The jury found that it took plaintiff approximately five minutes to go from her car into the store for her keys and return to the place where she fell.  This demonstrates that the pipes had been there but a very short time. The jury found that plaintiff could have seen the pipes if she had looked immediately prior to her fall.  She testified that she did not look.  Plaintiff owed a duty to herself for her own safety—a duty which she did not perform.  It was alleged that defendant had neglected "to in any manner light" the space where plaintiff was walking.  That allegation was not sustained by plaintiff's testimony. She said the lights on the canopy over the loading dock were burn-

ing. The jury did not find a lack of light; it found "improper lighting." What view the jury had of what would have been a proper lighting of the place is left to conjecture. No issue had been raised in the pleadings as to what would constitute proper lighting of the paved court. It seems reasonably clear from the evidence produced by defendant that there was much more light than plaintiff's evidence tended to show. We are not so much concerned here with the quantity of light, for the darker the place was the greater duty was placed upon plaintiff to use due care for her own safety. The jury specifically found that under the circumstances existing there at the time, a person in the exercise of ordinary care could have seen the pipes when five or six feet away from them. She was walking; she was not hurrying, and it is reasonable to say that she could have stopped promptly. The findings make it clear that plaintiff did not exercise due care for her own safety. Had she done so she would have sustained no injury. The result is that these findings conflict with the general verdict in plaintiff's favor. Under the statute (G. S. 1935, 60-2918) the special findings control in such a case. See, also, *Marley v. Wichita Transportation Corp.,* 150 Kan. 818, 96 P. 2d 877; *Smith v. Quivira Land Co.,* 153 Kan. 794, 113 P. 2d 1077; *Sayeg v. Kansas Gas & Electric Co.,* 156 Kan. 65, 131 P. 2d 648, and cases cited therein.

Appellee in this court stresses the fact that defendant filed no motion for a new trial in the court below and contends that it is not entitled to be heard upon the questions here presented. The point is not well taken. Our statute (G. S. 1935, 60-3302) specifically makes a ruling upon a demurrer an appealable order. The ruling upon a demurrer is a ruling upon a question of law, and a motion for a new trial is not necessary in order for this court to review the ruling. See *Rierson v. Southern Kansas Stage Lines Co.,* 146 Kan. 30, 33, 69 P. 2d 1; *Parsons v. State Highway Comm.,* 146 Kan. 476, 481, 72 P. 2d 75; *Kotwitz v. Gridley Motor Co.,* 148 Kan. 676, 84 P. 2d 903, and cases cited therein.

A motion for judgment upon answers to the special questions notwithstanding the general verdict presents a question of law, and if the same is overruled and judgment rendered on the verdict defendant may appeal without the motion for a new trial. In *Smith v. Tri-County Light and Power Co.,* 120 Kan. 354, 243 Pac. 331, speaking of rulings upon such a motion, the court said:

"A ruling of the court upon this motion, if it results in a judgment, is an

appealable order. If the motion is sustained and judgment rendered accordingly, the plaintiff may appeal. If it is overruled and judgment rendered on the general verdict the defendant may appeal." (p. 354.)

The result is that the judgment of the court below must be set aside with directions to enter judgment for defendant. It is so ordered.