No. 39,471

ALSONETTE BEATTY, *Appellant,* v. FREETO CONSTRUCTION COMPANY, INC., a Corporation, *Appellee.*

(276 P. 2d 355)

Opinion filed November 13, 1954.

*Aubrey Neale,* of Coffeyville, argued the cause, and *Raymond Belt,* of Coffeyville, and *Simeon Webb,* of Pittsburg, were with him on the briefs for the appellant.

*Paul L. Wilbert,* of Pittsburg, argued the cause, and *A. B. Keller* and *Randall D. Palmer,* both of Pittsburg, were with him on the briefs for the appellee.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for damages for personal injuries sustained by plaintiff alleged to have resulted from the

negligence of defendant. The jury returned a verdict for plaintiff for $5,000, and answered seven special questions. Plaintiff moved to set aside the answers to questions 2 to 6, inclusive, upon the ground that they were not sustained by the evidence, and also filed a motion for a new trial on the statutory grounds. These motions were denied. Defendant moved to strike the answer to question No. 7 upon the ground that it was not within the issues, and not sustained by the evidence; that it was a statement of a conclusion, and not of negligence. This motion was denied. Defendant also moved for judgment on the special findings notwithstanding the general verdict. This motion was allowed and judgment rendered for defendant. Plaintiff has appealed from all adverse rulings. Defendant has cross-appealed from pre-trial adverse rulings. The pertinent facts shown by the record may be stated as follows:

In the city of Parsons the Missouri-Kansas-Texas Railroad runs north and south through the city a little east of the main business district. Main Street (also State highway No. 160) runs east and west through the city and carries heavy vehicular traffic through an underpass under the railroad tracks and connects the business district of Parsons. The street was paved through the underpass and on each side of the pavement there was a cement sidewalk for pedestrians. Two grade schools and one high school are located west of the underpass which are attended by many students who reside east thereof.

The defendant, Freeto Construction Company, Inc., at the time of the alleged injury to plaintiff, was reconstructing the underpass under a contract with the State Highway Commission. The work of reconstructing the underpass was under the supervision of Mr. Walter M. Naylor, of the construction department of the State Highway Commission.

Defendant commenced the reconstruction of the underpass about the 1st of March, 1951. Shortly prior to that time the traffic on Main Street had been detoured across the railroad tracks two blocks north of Main Street. There was also a crossing used by part of the traffic three blocks south of Main. At each of those crossings a man was stationed to direct the traffic. Proper signs had been erected to mark this detour. Beginning at about the west end of the underpass and to the north thereof, but on the railroad right-of-way, there had been built a cement block building used by the railroad employees as a work shop. Sometimes, in

going to or coming from their work, the employees went along the south side of this building. This was not paved as a walk but was a dirt surface with perhaps a little gravel. In doing the reconstruction work, which required the widening of the underpass, defendant had cut down some of the dirt on the south side of the building so that the place to walk along the top was about eighteen inches to two feet wide instead of four feet wide as it had previously been. To get onto this walk from the top of the underpass, where there were seven tracks of the railroad company, there was a step-down of about fifteen to eighteen inches. No walkway was provided across the tracks.

This is better described by the accompanying photograph taken about thirty minutes after plaintiff's fall, which shows the path on which plaintiff undertook to walk and the barricades at each end thereof.

Plaintiff, a woman sixty-one years of age, lived in Independence, Kansas. She was a saleswoman for the Hoover Uniform Company. Her territory included the city of Parsons. Her duties were to visit doctors' offices, cafes, beauty shops, hospitals, barber shops, and any place where she might sell professional jackets and uniforms.

On the morning of March 20, 1951, plaintiff went by bus from Independence to Parsons to canvass the city. As the bus approached the underpass it followed the detour and crossed the tracks two blocks north of Main Street and then on to the bus station. By noon plaintiff had completed her work on the east side of the tracks and started to walk to the west side near Main Street. The exact route she took is not clearly shown by the abstract but she did reach the east side of the railroad tracks over the underpass. No persons were standing at that level on the east side of the tracks but several were standing on the other side of the tracks apparently watching the reconstruction in progress. It was alleged, and plaintiff testified, that she walked across the tracks and noticed a path along the south side of the cement block building across which there was a board on horses. She asked some man, who she thought had something to do with the work there, how to get down to the sidewalk on the north side of the underpass. There is conflicting evidence as to what transpired at that time. Plaintiff alleged, and testified, that she asked the man how to get down to the walk and that he told her to go around the board on the horses and follow two ladies who were about six feet ahead of her. The man who was standing there, later called as a witness, testified she did not ask him anything but

he saw her going around the board across the entrance to the path and called to her and told her not to go there, that it was dangerous, and that she didn't pay any attention to his statement but went on. He also said there were no women walking in front of her; other witnesses testified they saw no women besides plaintiff. Plaintiff testified she stepped down the fifteen or eighteen inch step at the end of the path and started to walk along it. She had taken but a few steps when she fell, feet forward, down the side of it. Plaintiff estimated the distance of the fall as about ten feet, perhaps it was about seven or eight. She did receive substantial injuries. Someone went to her and asked her if she wanted a doctor and she said she wanted to rest a little while and then she wanted to go home. A little later she was taken to a hospital at Independence.

While not separately stated in the petition, the acts of negligence alleged may be stated as follows: That defendant permitted pedestrians to use the walk in question in traveling east or west on Main Street while the reconstruction work was in progress; failed to erect warning signs that the walkway was dangerous; failed to erect signs instructing pedestrians the proper route to detour around the same; that defendant proceeded to excavate under and near the path which was being used by such pedestrians, and neglected to put any guardrail, obstruction or hindrance around the excavation being done along the path; failed to have a watchman on duty to instruct pedestrians as to the dangerous condition there existing. It was alleged that the path was about four feet wide and that there were no barricades or warning signs of any kind across the path; that defendant had excavated and was excavating underneath the path and the path had become dangerous but the danger was not apparent to persons using the same; that plaintiff started to walk along the path and walked a short distance when the path upon which she was walking gave way and plaintiff fell into a hole, ten feet to the bottom of the excavation being made by defendant. That defendant was negligently excavating under the path as plaintiff crossed the same and caused the path to cave in and give way, resulting in injuries to the plaintiff.

In defendant's answer these allegations were denied and contributory negligence of the plaintiff was alleged in several paragraphs with much detail. The reply was a general denial.

At the close of the trial the jury returned the verdict previously stated and answered special questions as follows:

"1. Do you find that plaintiff's fall was the result of an accident as defined by the Court's instructions? Answer. No.

"2. Was there anything to prevent plaintiff from seeing that the area she was entering was under construction? Answer. No.

"3. Was there a barrier with a sign 'Keep Out' on it across the east entrance to the path along the south side of the one-story concrete building? Answer. Yes.

"4. If you find that there was a barrier placed across the east entrance to the path as above set out, did the plaintiff go under or around this barrier? Answer. Around.

"5. Could plaintiff have seen that she was entering an area where construction and excavating had been and was being carried on if she had acted as an ordinarily prudent person? Answer. Yes.

"6. Did the path give way beneath the plaintiff as she walked along it? Answer. No.

"7. If you find the defendant guilty of any act or acts of negligence which proximately caused the plaintiff's fall in question, state what this act or acts of negligence were? Answer. The plaintiff was not sufficiently warned of the danger."

Plaintiff moved to strike the answers to questions 2 to 6, inclusive, upon the ground that the findings were not supported by the evidence, were outside the issues in the case, and the questions couched in such terms as to confuse the jury as to their meaning. This motion was denied.

Plaintiff also filed a motion for a new trial on the statutory grounds. This motion was denied.

Defendant filed a motion to set aside the answer to question No. 7 upon the ground that it was not supported by the evidence, and that the answer was a statement of a conclusion and not a statement of any negligence. This motion was denied.

Defendant also filed a motion for judgment on answers to the special questions notwithstanding the general verdict. This motion was sustained and judgment was rendered in favor of defendant with costs.

In this court appellant first argues that the answers to the special questions do not compel a judgment for defendant. It seems clear that the jury found in answering questions 2 to 6, inclusive, against plaintiff upon every ground of negligence alleged in plaintiff's petition. Answers to special questions should always be construed in harmony with the general verdict, if that is possible. Our statute, G. S. 1949, 60-2918, provides when a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly.

We have many decisions in harmony with this statute. See, *Fralick v. Kansas City Public Ser. Co.*, 168 Kan. 134, 211 P. 2d 443, and cases cited therein. Many more cases are cited under the statute above mentioned.

Appellant notes that defendant moved to strike the answer to question No. 7, which the court denied, and argues that the finding is inconsistent with other findings for which reason the court should have granted a new trial, citing *Cain v. Steely*, 173 Kan. 866, 252 P. 2d 909, and authorities therein cited. The point is not well taken for two reasons: First, this question appears never to have been presented to the trial court. Plaintiff's motion for a new trial did not ask for a new trial because of the inconsistent answers to the special questions. Second, which is more important, the answer to question No. 7 does not state a finding of negligence as alleged in the petition. Plaintiff had alleged there were no barriers or markings of any kind to indicate the place where she attempted to travel was dangerous. The jury did not find those allegations to be true. The only thing the jury found was that plaintiff was not *sufficiently* warned of the danger. What the jury thought was sufficient warning is not disclosed. That was not made an issue in the case, and had not been tried. Obviously, there was some warning. In this respect the case is very much like the case of *Glenn v. Montgomery Ward & Co.*, 160 Kan. 488, 163 P. 2d 427. In the opinion it is said:

". . . It was alleged that defendant had neglected 'to in any manner light' the space where plaintiff was walking. That allegation was not sustained by plaintiff's testimony. She said the lights on the canopy over the loading dock were burning. The jury did not find a lack of light; it found 'improper lighting.' What view the jury had of what would have been a proper lighting of the place is left to conjecture. No issue had been raised in the pleadings as to what would constitute proper lighting of the paved court. . . ." (pp. 493-4.)

In that case, as in this, the jury found that plaintiff could have seen the danger if she had looked. The trial court overruled defendant's motion for judgment on the answers to special questions notwithstanding the general verdict. This court reversed, and directed judgment for defendant.

The barricade at the top of the photograph across the end of the path is the one plaintiff walked around as found by the jury in answering question No. 4, and in doing so she had to step down a distance of fifteen to eighteen inches from the level of the ground

upon which the railroad tracks were laid. The evidence showed that barricade had the words *Keep Out* printed on it in large letters.

A witness, who was on that level near the south end of the barricade and who saw plaintiff when she fell, testified that it seemed when she stepped down she apparently lost her balance and threw her right hand against the wall of the building; that after she straightened up she took only a few steps forward on the path then slipped down to the bottom of the first landing shown in the photograph, a distance which plaintiff estimated as ten feet but which was actually about seven or eight. In the fall she sustained injuries which were the foundation of this action.

We find no error in the record. The judgment of the trial court is affirmed.