No. 34,267

J. J. MONTAGUE, *Appellee*, v. GILBERT BURGERHOFF, *Appellant*
(GILBERT BURGERHOFF and WILLIAM H. PHILLIPS, copartners,
doing business as BURGERHOFF & PHILLIPS ICE COMPANY,
Defendants).

(92 P. 2d 98)

Opinion filed July 8, 1939.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley* and *Milton Zacharias,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages for personal injuries. The case was submitted to a jury, which was discharged because it was unable to agree. The defendants appeal from an order overruling their demurrer to the evidence of plaintiff.

The plaintiff in his petition, after setting out the residence of defendants, alleged that they were engaged in the business of operating an ice plant in Wichita; that on June 23, 1937, plaintiff was in the employ of a business house in Wichita as a collector and was put in charge of an account of an employee of defendant ice company and that plaintiff had been to the place of business of defendant many times. The petition further alleged that the approach to the office of defendants was gained by going up two or three steps to a concrete dock and entering through a door leading directly off the dock, and that the steps, dock and door were open to and used by the general public. The petition then contained the following allegations:

"Fourth: That on the day in question the plaintiff mounted the steps and was about to enter the door when he was suddenly and violently struck, knocked down and received injuries.

"Fifth: That immediately prior to the time of the injuries, the defendant, Gilbert Burgerhoff, was having a controversy in the office of the company with one Elmer Braiser, who was either an employee or former employee of the defendant corporation. That plaintiff does not know the facts concerning the nature of the controversy between the defendant, Burgerhoff and the said Braiser, and was not concerned therein, but alleges that as a result of said altercation, the said defendant, Burgerhoff, acting individually and as the agent of the defendant corporation, as aforesaid, either struck, knocked, pushed, shoved, kicked or ran the said Elmer Braiser out of the door of the office of the corporation in such a sudden, violent and unexpected manner that the said Elmer Braiser was thrown or fell upon this plaintiff, causing the injuries and damage, as more fully set forth hereinafter. That said acts of the defendants, and each of them, were in reckless disregard of the consequences and in reckless disregard of the rights of the public and of the plaintiff.

"Sixth: Plaintiff further alleges that the defendant, acting as aforesaid, engaged in an unlawful altercation with the said Elmer Braiser, and that as a result of said unlawful altercation and an attempt to commit assault and battery, or in the commission of an assault and battery upon the person of Elmer Braiser, that the injury and damages to the plaintiff followed as a direct, natural and probable consequence of the wrongful acts of the defendants, and each of them, as aforesaid."

The answer of defendant Gilbert Burgerhoff was first a general denial, then a statement that he was the sole owner of the business. The answer further denied that William H. Phillips, the man from whom plaintiff was collecting, was an officer of the company; that Elmer Braiser was neither an employee nor agent of the company at the time set forth in the plaintiff's petition, and denied that defendant "struck, kicked, rammed, shoved, pushed or knocked Braiser at any time set out in the plaintiff's petition" or that he engaged in any unlawful altercation with Braiser. The answer further alleged that if plaintiff was injured it was due to his own negligence; that plaintiff at the time and place when he is alleged to have received his injury was a trespasser on the premises of defendant and that defendant had no knowledge of the presence of plaintiff at the time of his alleged injury, and at the time of the alleged injury of plaintiff he was not on his way to the office of defendant but was on his way to the warehouse of defendant and was not following the course of travel usually followed by defendant and was not on a mission for defendant but was solely on a mission for his own benefit.

The reply was a general denial. At the close of the evidence of plaintiff, defendants demurred to it on the ground that it did not prove any cause of action against the defendants or any of them.

This demurrer was overruled. Defendants then introduced their evidence. When the case was submitted to a jury it was unable to agree and was finally discharged.

With such a record the only orders from which defendants could appeal was the order overruling their motion for judgment upon the pleadings and opening statement of counsel and the order overruling their demurrer to the evidence. Gilbert Burgerhoff does appeal.

It should be noted at the outset that no motions were directed at this petition either asking that it be made definite and certain or that plaintiff be ordered to separately state and number his causes of action. It must be remembered also that—

"In testing the sufficiency of evidence as against a demurrer, court will consider plaintiff's evidence as true, disregard that unfavorable to plaintiff, and not weigh any part that is contradictory, or any differences between plaintiff's direct and cross-examinations, and, if so considered, there is any evidence which sustains the plaintiff's case, the demurrer should be overruled." (*Hurla v. Capper Publications, Inc.*, 149 Kan. 369, syl. ¶ 1, 87 P. 2d 552.)

Few rules are stated oftener than the above.

Defendant Burgerhoff argues first that the court erred in overruling defendant's motion for judgment upon the pleadings and opening statement of counsel and in overruling the demurrer of Burgerhoff to the evidence for the reason that the conduct of Burgerhoff was justified by the circumstances.

We will consider first the argument on the motion for judgment on the pleadings and opening statement. The pleadings as far as is pertinent to this question have already been set out herein. As much of the opening statement as is brought to us follows:

"The evidence will show that Mr. Burgerhoff started to go at one time after this man and he held his hand up and said 'Wait until I get my money.' They did pay him; put his money down on the counter by the doorway and he took the money and told Mr. Burgerhoff to come on outside and they would settle this matter. But this matter between Mr. Brasier and Mr. Burgerhoff, we were not there at the time this occurred.

"The evidence will show that he backed up a little and Mr. Burgerhoff came up in front of him and they argued some more; he backed up until about three feet from the door, still arguing with Mr. Burgerhoff and telling him to come outside and they would settle it.

"Just at that moment our client, Mr. Montague, came up the steps to see Mr. Phillips and was standing at the open door; just walked up and arrived at the open door when Mr. Burgerhoff reached out and hit this man. I don't know whether his fist was closed or open, but he shoved him violently so the man came out the door backwards towards Mr. Montague—so close that Mr.

Montague didn't have any time to get out of his way or anything else. He came backwards very fast and very violently down this one little step and ran directly into Mr. Montague, knocking him backwards because of the fracas he was having with Mr. Burgerhoff."

In his argument on this motion defendant points out the use of the words "reckless" and "wrongful" and "unlawful alteration" as describing the conduct of the defendant. He argues that the above words state only conclusions of law and raise no issue of fact. It is true that the words "reckless," "wrongful" or "unlawful" standing alone do not state a cause of action. We are interested in the facts pleaded rather than the conclusion of the pleader as to what his facts mean. Shorn of the words pointed out by defendant, the petition states that as plaintiff was about to enter the place of business of defendant he was suddenly and violently struck down; that defendant was having a quarrel with Brasier and either struck, knocked, pushed, shoved, kicked or ran Brasier out of the door of the office in such a sudden, violent and unexpected manner that Brasier was thrown or fell upon plaintiff. The petition then states that these "acts were in reckless disregard of the consequences and in reckless disregard of the rights of the public and the plaintiff." The statement just quoted is something more than a conclusion of law. It is in reality a further description of the acts of defendant set out immediately before the quoted statements. Our question is whether it is negligence for a proprietor of a building to knock a man down in such a violent and sudden manner as to injure a third party who is just entering the building on a lawful errand. The rule in such cases is as follows:

"Even against a demurrer a petition is liberally construed and held sufficient if the facts stated, whether well pleaded or not, with all the reasonable inferences to be drawn therefrom, constitute a cause of action. . . . And where the petition is not attacked by motion or demurrer, a still more liberal rule of construction is adopted. 'After answer filed, an objection to a petition that it does not state facts sufficient to constitute a cause of action is good only when there is a total failure to allege some matter which is essential to the relief sought, and is not good when the allegations are simply incomplete, indefinite, or statements of conclusions of law.' (*Laithe v. McDonald,* 7 Kan. 254, 261.)" (*Ball v. Oil & Gas Co.,* 113 Kan. 763, 766, 216 Pac. 422. See, also, *Barner v. Lane,* 126 Kan. 173, 267 Pac. 1003.)

The same general statement may be made with reference to the allegations of the sixth paragraph of the petition, wherein the actions of defendant are described as an unlawful alteration.

We shall next consider the argument of defendant that his demurrer to the evidence should have been sustained because his conduct was justified by the circumstances. In considering this argument we must notice the evidence.

The plaintiff testified that he was a collector and had an account against a son of Phillips, who was a defendant to the action; that he had seen the father several times before and that the father had made the payments for his son; that on the day in question he walked up three or four concrete steps to what is spoken of in the evidence as a loading dock almost on a level with the office of the defendant; that when he arrived upon the concrete dock the office door was just to the north and one turned to the right to go into the office; that there is an areaway about ten feet long and four or five feet wide; that there is a small step up from the dock to the office. He then testified, as follows:

"Brasier came backward out and very fast and struck me terrifically just as I was going to go to the doorway. I could not get out of his way he came so fast. He was coming backward. I didn't actually see any blow struck, it was done so quickly and this man's back was towards me. When I saw him he was some three or four feet inside. The terrific force that struck me knocked me four or five feet. Afterwards, Mr. Burgerhoff and Mr. Phillips came out to the car, and—

"They said they were sorry it happened and if they could do anything to give them a call, and Mr. Burgerhoff said he had trouble all day with that man and that he struck him and he was sorry he knocked him into me.

. . . . . . . . . . . . . .

"I walked up those four steps and was about a foot and a half or two feet from the office entrance. I saw three men and two were talking.

"Q. There were three men there and as far as you could see at least two were engaged in the argument? A. They were engaged in talking; yes, sir.

. . . . . . . . . . . . . .

"Q. You started to go in? A. I started towards the entrance; yes, sir.

"Q. How close did you get to the doorway before you noticed any motion on the part of any of these men? A. I didn't have a chance to notice anything. Just as I got to the door Mr. Brasier came flying backwards and struck me. I had no chance to get out of the way or notice anything.

. . . . . . . . . . . . . .

"I would say I fell in about the middle or center of the platform. My whole body was just about the middle. I didn't fall back at all—I was knocked. I was knocked off my feet and fell a few feet from the office entrance.

"Q. And you said Mr. Burgerhoff said he struck this man? A. Yes, sir."

The next witness for the plaintiff testified that he worked for

plaintiff's employers and was called to the scene of the accident. He further testified as follows:

"Well he (Mr. Burgerhoff) said this fellow, later I found out by the name of Brasier, had been in there and had worked for him and Mr. Burgerhoff owed him some money and he said 'I paid him and he was drinking and he claimed that I owed him more money than I gave him' and he was saying things and calling Mr. Burgerhoff names he didn't like, and he said 'I struck him and in so doing he fell back against Mr. Montague.'"

Elmer Brasier testified that he had been working and had been discharged; that he had a row with Burgerhoff about how much should be paid; that he finally got his money and left and had a few more drinks. He further testified as follows:

"After I got the money, I and Mr. Burgerhoff had some words all that time and I was telling him to come out on the dock where we could argue it out and he started out to the dock and I was backing up and I would stop and he would stop and when we got in a couple feet of the door—I don't know just how close to the door I was—I was awful close to it—he gave me a shove. He didn't strike me; he shoved me.

. . . . . . . . . . . . . .

"After I came back with the three cakes of ice and the receipts, I was paid off in cash.

"Q. Were you paid in cash? A. Yes, sir.

"Q. You were paid how much? A. Five dollars the first time and two and a half the second time.

"Q. What do you mean the second time? A. I wouldn't leave until I got the other two and a half. I had seven and a half coming for three days.

. . . . . . . . . . . . . .

"I cursed him fifteen or twenty minutes, or maybe thirty. Then I asked him to come out on the dock and we would settle the question. He was back of the cage at that time, and he came around into the hallway.

"Q. And he started to come on out didn't he, to put you out, or tell you to get out? A. He started and he stopped and I kept haggling him on and again he stopped and the second time I stopped he caught up with me and gave me the shove."

There was considerable more testimony from this witness with reference to his drinking.

We must now notice part of the testimony of the defendant when he took the stand in his own behalf. We do that pursuant to the rule laid down by this court in *City of Garnett v. Dowis,* 144 Kan. 484, 61 P. 2d 913. There this court held:

'The record examined, and held that if evidence of the city failed to establish facts essential to prove the alleged violations of its pool-hall ordinance, defendant supplied the deficiency, and he was not prejudiced by the overruling of his demurrer to the city's evidence." (Syl. ¶ 1.)

The defendant testified as follows:

"Q. When you came around here (indicating) was Mr. Montague back here by the steps (indicating)? A. Not until after this man ran and hit him.

"Q. You can't tell the jury, can you, that Mr. Montague was never up here by the door; within two feet of the door? A. He was not. The only time, when we carried him across there.

"Q. That's the only time? A. Yes, sir.

"Q. What was he doing back there (indicating) when you saw him? A. I don't know.

"Q. You said you saw him. Tell us what he was doing. A. He was standing there. The man run against him and knocked him down.

"Q. What was he doing? A. I don't know.

"Q. You saw him didn't you? A. Sure I saw him.

"Q Tell us what he was doing. A. I don't know which direction he was coming to get into the office.

"Q. You said he was standing there. A. Yes.

"Q. Was he looking at the office and you stood there looking at him? A. When the man run that way I couldn't keep my eyes on everybody.

"Q. It did happen pretty fast? A. Yes, sir.

"Q. There isn't any argument but what the man was knocked down then? A. Mr Montague?

"Q. Yes. A. Sure, he was knocked down."

Here we have a record of evidence from which the jury would be warranted in believing that the proprietor of the ice plant either pushed or knocked a man against another man whom he saw about to enter his place of business and did this in such a violent manner that the man entering was injured. Does that constitute actionable negligence?

In the first place the plaintiff was at least a licensee upon the premises. The contention of the defendant is that since plaintiff was a mere licensee on the premises that he only owed him the duty to refrain from acts of willful and wanton negligence. Defendant argues that there is no claim of such a high degree of negligence here.

There is a further refinement of that rule, however. It is stated in *Brigman v. Construction Co.*, 192 N. C. 791, 136 S. E. 125. There the court said:

"The general rule is that a trespasser or permissive or bare licensee upon the property of another cannot recover for defects, obstacles, or pitfalls upon the premises, unless the injury shall result from willful or wanton negligence. . . . The strict rule exempting the owner of premises from liability to a licensee is ordinarily applied when the negligence of the owner is passive. If the owner, while the licensee is upon the premises in the exercise of due care, is affirmatively and actively negligent in the management of his property or

business, as a result of which the licensee is subjected to increased hazard and danger, the owner will.be liable for injuries sustained, as a result of such active and affirmative negligence . .. ." (pp. 794, 795.)

In that case a woman and her husband had come on the premises of the defendant in an automobile. While she was sitting in the car waiting for her husband a truck of the defendant company backed into the car in which she was sitting and injured her. In holding the company liable the court said:

"So, applying the established rules of liability to the facts of this case, even if the plaintiff was a trespasser or permissive licensee, as contended by the defendant, she was not injured as a result of existent conditions upon the premises or as a result of the passive negligence of omission, but she was injured by the actual negligence of the defendant in backing upon the car in which she was sitting, a loaded truck, without notice or warning, and while she was at a place which the defendant had designated as a parking place for automobiles." (p. 797.)

In *Corrigan v. Union Sugar Refinery*, 98 Mass. 577, 96 Am. Dec. 685, the plaintiff in going through a private passageway owned by the defendant was struck and injured by barrels thrown out the windows of the building by defendant's agents. The court, in citing *Sweeny v. Old Colony Railroad Co.*, 10 Allen, 368, held the company liable, and said:

"Even if he was there under a permission which they might at any time revoke, and under circumstances which did not make them responsible for any defect in the existing condition of the way, they were still liable for any negligent act of themselves or their servants, which increased the danger of passing and in fact injured him." (p. 578.)

(See, also, Note in 49 A. L. R. 778; also, 45 C. J. 804; also Restatement, Torts, § 341.)

In this case the basis of liability is not some claimed defect in the premises, but is the act of .defendant in knocking the discharged employee against plaintiff in such a negligent manner as to injure plaintiff.

The judgment of the trial court overruling the demurrer of defendant to the evidence of plaintiff is affirmed.