No. 43,692

Beulia M. Kinney, *Appellant,* v. The Atchison, Topeka and Santa Fe Railway Company, a Corporation, *Appellee.*

(392 P. 2d 873)

Opinion filed June 6, 1964.

*R. Bowland Ritchie,* of Wichita, argued the cause and was on the brief for the appellant.

*Byron Brainerd,* of Wichita, argued the cause, and *C. J. Putt, W. E. Treadway, J. B. Reeves* and *Roth A. Gatewood,* all of Topeka, and *Lawrence Weigand, Lawrence E. Curfman, Charles W. Harris, Orval J. Kaufman, J. Ruse McCarthy, Donald A. Bell, J. L. Weigand, Jr., Spencer L. Depew, Paul M. Buchanan* and *Charles R. Moberly,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an action by Beulia M. Kinney (appellant) to recover damages arising out of personal injuries she sustained in slipping and falling to the floor of The Atchison, Topeka and Santa Fe Railway Company's depot at Chanute, Kansas, and to recover for her husband's consequent damages arising from her injuries. From an order of the trial court sustaining a demurrer to the plaintiff's evidence, appeal has been duly perfected.

The overall question is whether the evidence admitted at the trial was sufficient to make out a *prima facie* case.

The petition claimed the appellant's injuries were caused by the railroad's negligence in maintaining its floor; that the floor was exceptionally slick; that this condition was caused by the use of an oiled dust mop used by the railroad's employee on that part of the depot waiting room floor over which the appellant walked; that the mop was used a few minutes before her fall; that the condition of the floor could not be detected by the appellant; that it was unevenly waxed and dimly lighted; and that as the appellant was walking down the aisleway toward the rest room she slipped and fell and broke her left hip. Subsequently during her convalescence, and without intervening cause, the appellant refractured her hip.

At the trial of the case considerable evidence was excluded by the trial court. Among the evidence excluded was the purpose for which the appellant entered the depot.

A motion for a new trial was filed by the appellant seven days after the trial, and upon motion of the railroad was stricken by the court as not having been filed within three days as required by the code.

On appeal to this court ten specifications of error were assigned by the appellant, all of which pertain to trial errors except the third, which assigns as error the sustaining of the defendant's demurrer to the plaintiff's evidence. On January 13, 1964, this court sustained the railroad's motion to dismiss all specifications of error, except specification No. 3 which the railroad also sought to have dismissed. On January 30, 1964, this court denied the appellant's motion to set aside such order.

Questions relating to the erroneous exclusion of evidence must be raised by a motion for a new trial, and the ruling on that motion specified as error, in order to be subject to appellate review. The foregoing rule also applies when a demurrer to the evidence has been sustained. (*Mid-State Homes, Inc. v. Hockenbarger*, 192 Kan. 505, 389 P. 2d 760.)

In ruling on a demurrer courts do not weigh or compare contradictory evidence, but accept all the evidence as true, give it the benefit of all inferences that may properly be drawn therefrom, and consider only such portions thereof as are favorable to the party adducing it. (*Reda v. Lowe*, 185 Kan. 306, 342 P. 2d 172.) Another rule of equal importance is that in testing the sufficiency of the evidence, a demurrer is to be regarded as directed to the *evidence admitted*. (*Emporia Plumbing & Heating Co. v. Noland*, 177 Kan. 35,

276 P. 2d 296; and *Jett-Wood Central Mercantile Co. v. Pringle,* 128 Kan. 159, 160, 277 Pac. 37.) This last rule is subject, of course, to the modification that if the party complaining properly raises the question of excluded evidence on appeal, and shows that such evidence should have been received, then such evidence may also be entitled to consideration in passing on the demurrer in the appellate court. (*Mid-State Homes, Inc. v. Hockenbarger,* supra.)

In the instant case, however, the appellant has not properly raised the question of excluded evidence on appeal, and our review is confined to whether the evidence admitted at the trial was sufficient to make out a *prima facie* case for the appellant.

The evidence submitted at the trial, considered most favorably to the appellant, established that on the 9th day of December, 1960, at 6:30 o'clock in the morning, the appellant drove with her daughter and one passenger to Chanute, Kansas. They went to the Santa Fe depot at Chanute where the appellant alighted and entered the depot through the east door. She turned down the aisleway toward the ladies' rest room. She walked down the corridor about eight inches from the counter, but did not reach the rest room door because she slipped and fell. Her left foot, which was nearest the counter, slipped causing the appellant to fall forward on the floor. She felt immediate pain after the accident and was unable to get up. She turned and supported herself in a semi-sitting position, supporting herself on her right arm. The evidence further discloses that her injury consisted of a broken hip.

The evidence was sufficient from which a jury might infer that shortly before the appellant's fall an employee of the railroad had pushed a dust mop, which had been retreated with an oil base treater a number of times without being laundered, over the floor where the appellant fell; that this oil base treater would have been invisibly deposited upon the floor, consisting of asphalt tile, which still retained its wax at the point where the appellant fell; that no warning was given to the appellant of the slippery condition; and that the railroad was or should have been aware that it was causing a slippery condition on the floor at the point in question.

The point of law here presented is focused in the trial court's ruling which was stated as follows:

"Under the testimony before the court the plaintiff here was what is known in the law as a licensee, and as I understand it, the duty toward a licensee is not to wilfully or intentionally injure the plaintiff. Giving the plaintiff the

benefit of all doubt, the testimony here would only be that the defendant might have been negligent in allowing, by drawing the inference from the testimony, in permitting the floor to be slippery. This would be actionable negligence, in the Court's opinion, if the plaintiff were an invitee, and the Court is of the opinion that that is not sufficient.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The Court is still of the opinion that there were no acts committed here by the defendant that were wilful, intentional or reckless which resulted in the injury to the plaintiff, and, therefore, the demurrer to the evidence will be sustained."

The railroad concedes the appellant to be a gratuitous licensee. The appellant's evidence, presented by the chief clerk of the railroad's depot at Chanute, was to the effect that ladies frequently entered the depot, made use of the rest room and left without transacting any business at the depot.

The ultimate question to be determined is what duty of care did the railroad owe the appellant while she was on the railroad's premises as a gratuitous licensee.

The railroad in an effort to support the trial court's decision contends that the appellant, as a licensee, has no cause of action because of injury received through the negligence of the owner or occupant of the premises to which the license extends; and that the owner or occupant of premises owes no duty to the licensee except to refrain from wilfully or wantonly injuring her. (Citing *Backman v. Vickers Petroleum Co.,* 187 Kan. 448, 357 P. 2d 748.)

A *licensee* has been defined as a person who is privileged to enter or remain on land by virtue of the possessor's consent, whether given by invitation or permission. On the other hand, where there is a mutual interest or relationship inuring to the benefit of both the injured party and the occupier of the premises, an invitation is implied and the injured party is considered a business visitor or invitee, the latter being the definition of a *business invitee.* (*Backman v. Vickers Petroleum Co.,* supra.)

G. S. 1949, 66-234, first enacted in 1870, provides:

"That railroads in this state shall be liable for all damages done to person or property, when done in consequence of any neglect on the part of the railroad companies."

Questions regarding the meaning of the above statute were raised as early as *St. Jos. & D. C. Rld. Co. v. Grover,* 11 Kan. 302, where the court held a railroad liable for ordinary negligence under the statute for injury done by its trains to cattle on the track.

In *Fleming v. Brown*, 150 F. 2d 801 the Federal Circuit Court of Appeals for the Eighth Circuit in 1945, in construing Kansas law, held that even though the decedent was not on the station grounds in connection with business with the railroad, where the public had passed over private railroad property for a long time with the implied permission of the railroad which had control of the same, and where it could be said that a portion of the property was temporarily devoted to a public use, persons using the way were not deemed to be trespassers or mere licensees, and the railroad was liable for ordinary negligence toward those using the way.

As an additional ground 66-234, *supra*, was held by the court to support its holding that the railroad had a duty to exercise reasonable and ordinary care to prevent injury to the public on the station grounds.

The facts in *Fleming v. Brown*, supra, disclose that the action was against the trustee of the railroad company brought by the parents of Brown to recover for the wrongful death of their son, Arley, caused by a Rock Island freight train jumping the track at the Scandia, Kansas, station. The decedent, two girls and another boy were parked in the decedent's truck in the station's parking area. The truck was struck by one or more of the derailed freight cars. The decedent and one girl were killed outright. The other boy was fatally injured and one girl was seriously injured.

The plaintiff's evidence tended to show that the decedent, accompanied by the girls, had driven the other boy to the station to pick up a Rock Island timetable. The defendant's evidence was that the four had gone to the station to watch the Rock Island Rocket go through. Thus, the issue was presented as to the duty of the railroad under Kansas law toward the decedent had he been at the depot only for the purpose of watching the train go by. The trial court instructed the jury that the railroad would be responsible for the failure to exercise ordinary care, if such failure caused the decedent's injuries even though he was not on the station grounds in connection with business with the defendant, and the Circuit Court affirmed such instruction.

In that case the facts disclosed the parking area at the station grounds was formed by a connecting public road which came to a dead end at the station grounds, with a cinder and gravel surface roadway extending from the public road over part of the railroad right of way to the railroad station. The roadway across the station

grounds and the cindered parking area on both sides were maintained by the railroad for over twenty-five years. No sign was ever erected to limit or prohibit general public use of the roadway and parking area, and the evidence tended to show that people frequently went to this area for their private purposes, such as to visit and watch the trains go through, as well as to do business with the railroad. It also appeared that use of this area was the only available method by which a vehicle could readily turn around to return over the public road to Scandia.

The railroad cites *Malott v. Railroad Co.,* 99 Kan. 115, 160 Pac. 978; *Wilson v. Railway Co.,* 66 Kan. 183, 71 Pac. 282; and *Railway Co. v. Cappier,* 66 Kan. 649, 72 Pac. 281, for the proposition that the statute (66-234, *supra*) was not considered by the court as defining the duty of the railroad toward the public under the circumstances presented in such cases. It may be said these cases all pertain to the use of railroad premises which are not commonly used by the public and to which no invitation could be implied. The injured persons were considered to be trespassers.

We think the Federal Circuit Court in *Fleming v. Brown,* supra, after reviewing numerous Kansas cases, has correctly construed the Kansas law. Accordingly, we hold where the public uses premises of the railroad, which the railroad devotes to public use with the implied permission of the railroad which has control of the premises, such as the station depot in the instant case, the Kansas law imposes a duty on the railroad to exercise ordinary and reasonable care in the operation of its railroad to avoid injury to the public on such premises, whether the individuals using the premises be there as business invitees or as gratuitous licensees; and the provisions of G. S. 1949, 66-234 define the duty of care owed by the railroad to the public under such circumstances.

The judgment of the lower court is reversed with directions to grant a new trial.