No. 45,436

HARRY LEMON, Father and Next of Kin of Michelle Lemon, Deceased, *Appellant,* v. RODNEY H. BUSEY, RALPH E. EVERITT and L. IRVIN MORGAN, Trustees of THE FIRST BAPTIST CHURCH OF WICHITA, a Religious Corporation, and MONTGOMERY ELEVATOR COMPANY OF KANSAS, a Corporation, *Appellees.*

(461 P. 2d 145)

Opinion filed November 8, 1969.

*Orval L. Fisher*, of Wichita, argued the cause, and *Jack Glaves, Edward Weil, Gerald L. Michaud, Russell Cranmer, M. William Syrios, Jim Lawing, Kenneth Ingham* and *Bradley Post*, all of Wichita, were with him on the brief for the appellant.

*H. W. Fanning*, of Wichita, argued the cause and was on the brief for the appellees, Trustees of The First Baptist Church of Wichita.

*John Prather*, of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, David W. Buxton, John T. Conlee, Richard I. Stephenson, John E. Matson* and *Douglas D. Johnson*, all of Wichita, were with him on the brief for the appellee, Montgomery Elevator Company of Kansas.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for the wrongful death of a five year old girl as a result of a fall from the fifth floor roof of a church building. It is brought against the trustees of the church and the Montgomery Elevator Company, claiming that one or all of the defendants were guilty of negligence by leaving a door unlocked which led to the roof, by means of which the child gained access to the roof.

The defendants' motion for summary judgment was sustained at the pretrial conference, the trial court holding that the child was a licensee on the church premises, by reason of which the defendants owed her no duty of ordinary care. Appeal has been duly perfected by the plaintiff.

The underlying question on appeal involves the duty of care owed by the defendants to Michelle Lemon.

The material facts in this case are not in dispute. The action was commenced by Harry Lemon (plaintiff-appellant) as father and next of kin of Michelle Lemon, deceased, who was five years old at the time of her death.

Leta Walker, the deceased's grandmother, was babysitting with Michelle Lemon on April 9, 1965, and took the child with her to The First Baptist Church of Wichita where Mrs. Walker was employed part time. Mrs. Walker was a member of the church congregation, but neither Michelle nor her parents were members, nor were they affiliated with the church in any way, although the parents had formerly been members. The child had accompanied her grandmother to work at the church building in the past and had attended Sunday School there, but had never been in the care of the nursery. The child was not on the church premises for any church function or business at the time in question, nor was she in any manner under the supervision of church employees. The child was brought to the church for the convenience of her grandmother and parents. No church meetings were being conducted or in session at the time of this incident, and no children were being supervised in the church nursery on the day in question.

While Mrs. Walker was busy operating a duplicating machine, Michelle went to play in the hall with her grandmother's permission. The child was next seen falling from the south side of the roof on the fifth floor of the educational building of the church. The injuries sustained resulted in her death. No evidence was presented as to how the child got onto the roof.

The child could have reached the roof of the church building either by means of a fire escape or by means of an unlocked door which allowed access onto the roof. For purposes of this appeal it will be assumed she reached the roof by means of the latter route.

The Montgomery Elevator Company had a service contract to service the church elevators. On the day in question the door to the roof, which was normally kept locked, had been unlocked to permit a Montgomery employee to work in the elevator head house located on the roof. For reasons which are in dispute this door was not relocked. The plaintiff contends and alleges in his petition that the failure to relock this door constitutes ordinary negligence on the part of one or all of the defendants herein and subjects them to liability for the child's death. The plaintiff also claimed in his petition that the defendants were maintaining an attractive nuisance, but this contention has been abandoned in the plaintiff's brief on appeal. No allegation was made in the petition that any one of the defendants was guilty of willful, intentional or reckless conduct.

No allegation was made in the petition that the church building was a dangerous instrumentality.

We shall continue to refer to the parties throughout this opinion as plaintiff and defendants.

The primary contention of each of the defendants herein is that the deceased child was on the church premises as a licensee, and as such they did not owe her a duty of ordinary care, but that they owed only a duty to refrain from willfully, recklessly or intentionally injuring the child. This was the basis upon which the trial court entered summary judgment for the defendants.

The plaintiff, on the other hand, contends there are factual issues in dispute in this matter. He argues in his brief:

". . . it appears clear that a jury could well conclude that the deceased child has the legal status of a licensee by implied invitation or an invitee. Plaintiff contends that regardless of the particular status of the child, the basis of liability to the deceased child in this case was the forseeability of harm and the measure of duty owed by each of the defendants was care proportionate to the forseeable risk. This, of course, called for a factual determination by the trier of the facts."

The plaintiff argues further the acquiescence of the church in the use of the church premises by the public, and the Lemon child in particular, amounted to an invitation to the deceased child who thus had the status of a licensee by invitation, if not, in fact, an invitee, and in either event a duty of ordinary care was owed by the defendants.

If a duty to excercise ordinary care was owed to the child, the judgment of the trial court was erroneous. If the defendants did not owe Michelle Lemon the duty of ordinary care, the judgment of the trial court was correct.

Was Michelle Lemon an invitee or a licensee?

The plaintiff's approach to this case discloses a confusion of theories.

This court has made it clear that an owner of property owes an invitee a duty to exercise ordinary care for his safety. The owner of property owes a person having any other status, whether that of a trespasser, a licensee, a social guest, or a mere passerby, only the duty to avoid willfully, intentionally or recklessly injuring him. Here no claim is made that the defendants violated any duty other than to exercise ordinary care.

The crucial fact that determines Michelle Lemon's status is not whether she was invited to be on the church premises at the time

of the occurrence, but rather what her *purpose* was for being there. In Restatement, Second, Torts § 332, an "invitee" is defined as follows:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." (p. 176.)

Under the foregoing definition it is clear Michelle Lemon could not have been a "business visitor."

The fact that someone is invited to visit does not make him a public invitee. The purpose of his visit determines his status. In Restatement, Second, Torts § 332, it is said in Comment *a*:

" 'Invitee' is a word of art, with a special meaning in the law. This meaning is more limited than that of 'invitation' in the popular sense, and not all of those who are invited to enter upon land are invitees. A social guest may be cordially invited, and strongly urged to come, but he is not an invitee. . . ." (p. 176.)

The foregoing rules in Restatement, Second, Torts, are confirmed in our decisions. In *Ralls v. Caliendo*, 198 Kan. 84, 422 P. 2d 862, a social guest was said not to be an invitee even though she had been invited to the home for Christmas dinner, but was a mere licensee. The status of the plaintiff there was not determined by whether or not she had been invited to be on the premises, but by *the purpose* for which she was there.

In *Backman v. Vickers Petroleum Co.*, 187 Kan. 448, 357 P. 2d 748, the wife of an employee was injured as a result of the employer's negligence in maintaining a parking lot. It was clear the employer had no objection to her presence on the premises and had even, at times, provided recreational and social facilities for the families of employees. There the plaintiff argued that her husband had the status of a business invitee, and that she had the same status as that of her husband. The court rejected this contention holding as follows:

"A licensee is a person who is privileged to enter or remain upon premises by virtue of the possessor's consent, whether given by invitation or permission.

"Where a wife brings her husband back to his employer's place of business to work in the evening, and later comes to take him home, and in parking and going into the office building, slips on ice in the company parking lot suffering

personal injury, she is a mere licensee under the above definition and no breach of duty by the employer toward her has been shown in the evidence." (Syl. ¶¶ 1, 3.)

The plaintiff attempts to distinguish the *Backman* case by saying the church involved in this case does not have the status of a private place of employment, but must be considered as a public building to which the public has an implied invitation. To support this proposition the plaintiff relies on *Davis v. Central Congregational Society*, 129 Mass. 367, 37 Am. Rep. 368 (1880), where it was said:

"If a religious society gives notice of a meeting to be held at its house of worship, and invites the members of other societies to attend, a member of a church so invited, while on the land of the society, is not a mere licensee, and may maintain an action against the society for a personal injury sustained, while in the exercise of due care, from the dangerous condition of the defendant's premises." (Syl.)

Many cases are cited by the plaintiff from other jurisdictions, where a person was injured on church premises *while attending church-sponsored functions*, similarly holding that such person had the legal status of an invitee.

The distinguishing factor in the instant case is that Michelle Lemon was not in the church building for any of the purposes for which the church building was open to the public, or for any purpose connected with the operation of the church office. The plaintiff's attempt to distinguish the *Backman* case fails to show why the office portion of a church building is any different from the office of any other *private* place of business.

It is important to note in cases of this type the time, place and purpose of the visit determine the status of the visitor.

In the recent case of *Roberts v. Beebe*, 200 Kan. 119, 434 P. 2d 789, a nine year old girl was struck in the eye by a shot from a BB gun. The girl, after having been previously told to leave the yard, apparently was sitting on a fence in the back yard out of the direct line of fire, but was struck by a pellet that ricocheted. A judgment in her favor in the lower court was reversed on appeal with the following comment:

". . . This is not to say that at her tender age and under the existing circumstances she was a trespasser, but viewing the evidence in its most favorable light Jeanie could be raised to no preferred status higher than that of licensee. . . . Giving Jeanie the standing of a social guest she would have enjoyed no greater status than that of the injured guest in the recent case of *Ralls v. Caliendo*, 198 Kan. 84, 422 P. 2d 862, . . ." (p. 124.)

The plaintiff argues that Kansas does recognize the implied in-

vitation doctrine, citing *Nave v. Hixenbaugh,* 180 Kan. 370, 304 P. 2d 482; *Campbell v. Weathers,* 153 Kan. 316, 320, 111 P. 2d 72; *Fleming v. Brown,* 150 F. 2d 801 (8th C. C. A. 1945); and *Kinney v. Atchison, Topeka & S. F. Rly. Co.,* 193 Kan. 223, 392 P. 2d 873.

In *Nave v. Hixenbaugh,* supra, a passenger in an automobile was warming herself in a gas station while the driver bought gas. In *Campbell v. Weathers,* supra, a regular customer at a place of business operated as a restaurant and cigar store, which was open to the public, used the toilet after having looked over merchandise; and in *Fleming v. Brown,* supra, a train derailed killing a boy parked in a truck at a railroad station parking lot. In each of these cases the plaintiff was on the defendant's premises for a *purpose* for which the general public was invited. In the *Kinney* case a special statute imposing liability upon railroads (K. S. A. 66-234) controlled the decision. This statute provides that railroads in this state shall be liable for all damages done to person or property, when done in consequence of any negligence on the part of the railroad companies. The holding of the court in *Kinney* is indicated by the following language:

". . . Accordingly, we hold where the public uses premises of the railroad, which the railroad devotes to public use with the implied permission of the railroad which has control of the premises, such as the station depot in the instant case, the Kansas law imposes a duty on the railroad to exercise ordinary and reasonable care in the operation of its railroad to avoid injury to the public on such premises, whether the individuals using the premises be there as business invitees or as gratuitous licensees; and the provisions of G. S. 1949, 66-234 define the duty of care owed by the railroad to the public under such circumstances." (p. 228.)

None of the cases cited by the plaintiff involves a situation, such as that in the instant case, where the purpose of the plaintiff's visit to the defendant's premises was purely social or purely for the convenience of an employee. (See *Dye v. Rule,* 138 Kan. 808, 28 P. 2d 758; *Steinmeyer v. McPherson,* 171 Kan. 275, 232 P. 2d 236; *Hogan v. Hess Construction Co.,* 187 Kan. 559, 358 P. 2d 755; and *Blackburn v. Colvin,* 191 Kan. 239, 380 P. 2d 432.

The place a customer visited on the premises was material in *Thompson v. Beard and Gabelman, Inc.,* 169 Kan. 75, 216 P. 2d 798. There a customer was looking for a fitting room and wandered through an office, through another door and fell downstairs. In sustaining a directed verdict for the defendant the court said:

". . . The duty of the proprietor of a place of business which is open to public patronage to use ordinary care to make the premises reasonably

safe for customers is *generally limited to that part of the premises designed, adapted, and prepared for the accommodation of customers, or to which customers may reasonably be expected to go.* The duty of the proprietor of a place of business to his customers does not require him to render safe for their use parts of the building reserved for use only by him and his employees, such as private offices, shipping rooms and warerooms, unless he expressly or impliedly invites or induces a customer to enter such a reserved part. (38 Am. Jur. 794, and cases cited.) A person who has received an injury in consequence of passing through a wrong doorway in a part of the building not designed for the use of unattended customers cannot recover unless he was induced to enter therein by the invitation or allurement of the proprietor. . . ." (p. 77.)

The foregoing cases make it clear that Kansas adheres to the definition of an invitee as set forth in Restatement, Second, Torts. In the instant case Michelle Lemon was not on the premises of this church for any purpose related to the business of the church. She was there for the personal convenience of her grandmother and her parents. By reason thereof she was not an invitee but a mere licensee. Under these circumstances the duty of care owed to her by the defendants was to avoid willfully, intentionally or recklessly injuring her, unless the rule is altered by reason of her age.

Does the fact that Michelle Lemon was only five years of age change the duty owed to her by the defendants?

The negligence relied upon by the plaintiff in the instant case would, at best, be passive negligence arising from the failure of the defendants, or their employees, to lock the door of the church building leading to the roof. Such passive negligence cannot amount to willful, intentional or reckless misconduct and, consequently, it is not sufficient to enable recovery for the death of a licensee from the owner or occupant of the premises, absent a higher degree of care owed by the defendants to an infant licensee. (See *Graham v. Loper Electric Co.,* 192 Kan. 558, 389 P. 2d 750.)

Whether a different rule should be applied where children are involved than has been applied to adults has been squarely met in the recent case of *Roberts v. Beebe,* supra, where the court, after holding a nine year old plaintiff to be a licensee, states:

"Generally it appears the same rule applies even though the trespasser or licensee might be an infant. (*Healer v. Inkman,* 94 Kan. 594, 146 Pac. 1172; *United Zinc Co. v. Britt,* 258 U. S. 268, 66 L. Ed. 615, 42 S. Ct. 299, 36 A. L. R. 28; 99 A. L. R. 2d Anno. 461, 462; 65 C. J. S., Negligence, § 63 (68), p. 795. . . ." (p. 124.)

The case holds in substance that a nine year old girl occupying the status of a licensee on the premises is entitled to no greater protection than an adult. In other words, the nine year old licensee has no cause of action because of injury received through the ordinary negligence of the owner or occupant of the premises to which the license extends. The owner or occupant of the premises owes no duty to the licensee except to refrain from willfully, intentionally or recklessly injuring her.

The court went on, however, to recognize an exception to the general rule, established by application of the attractive nuisance doctrine, not here applicable.

Another exception to the general rule is found in *Wroth v. McKinney*, 190 Kan. 127, 373 P. 2d 216. There the plaintiff was employed by the defendant to do certain plumbing work at the defendant's residence, and the plaintiff's four year old son, who accompanied him to the premises, went into the house to use the bathroom. While in the house the child found a loaded revolver in the bedroom, easily accessible to the child. In playing with the gun the child killed himself. The court held the child to be no less than a licensee, but because the defendant had a dangerous instrumentality on his premises he was required to use the highest degree of care. The duty of care imposed upon one arising from the ownership of a dangerous instrumentality was discussed in the opinion as follows:

"Kansas has long followed the rule that the highest degree of care is required of all responsible persons having ownership or control of dangerous explosives such as dynamite and firearms. (*Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320.) Under the Clark case the degree of care has to be commensurate with the dangerous character of the instrumentality and a duty to exercise the highest degree of care never ceases. (p. 271.) On the same subject, see *Goehenour v. Construction Co.*, 104 Kan. 808, 810, 180 Pac. 776." (p. 130.)

The foregoing doctrine concerning ownership of a dangerous instrumentality has nothing whatsoever to do with the issue in the instant case. A church building cannot be classified as a dangerous instrumentality, and an unlocked door leading to the roof of the church building does not fall in this category.

In the instant case the duty owed to Michelle Lemon by the defendants was to avoid willfully, recklessly or intentionally injuring her. The plaintiff does not contend in his brief that such a duty was breached. The mere fact that Michelle Lemon was five years old is not sufficient to impose liability upon the defendants herein.

The defendant, the Montgomery Elevator Company, was not an owner or possessor of the church premises herein, but its employee was engaged in a routine service call under a routine service contract. As such its duty can be no greater than the owner of the premises. One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land. (Restatement, Second, Torts § 383; and see *Roberts v. Beebe,* supra.)

There is no support in the record for the contention that Michelle Lemon was an invitee as to any of the defendants.

The judgment of the lower court is affirmed.

FATZER, J., dissenting: The court holds that the little five-year-old deceased girl was a licensee throughout the church at the time she fell from the roof of the five-story building, and then applies the common-law rule that the only duty an occupier of land owes to a licensee is to refrain from willful and wanton misconduct.

The basis of liability in this case was not some claimed defect or obstacle in or on the church premises, but was the overt act of the defendants, and particularly the elevator company, in leaving the door on the fifth floor leading to the church roof unlocked so as to afford the little girl access to the roof of the church from which she fell.

Under the rule announced in *Montague v. Burgerhoff,* 150 Kan. 217, 92 P. 2d 98, affirmed in *Morris v. Atchison, T. & S. F. Rly. Co.,* 198 Kan. 147, 422 P. 2d 920, the plaintiff was entitled to present his case to a jury. The negligence which was conceded by both defendants, was not passive negligence—negligence which causes dangers arising from the physical condition of the premises—but was active negligence in the management of the church property—leaving the door unlocked—which resulted in the little girl being subjected to increased hazards and danger. Active negligence as applied in *Montague* is conduct which represents an increased hazard or danger to the licensee, or may be deemed an overt act of negligence. See James, Tort Liability of Occupiers of Land: Duties owed to Licensees and Invitees, 63 Yale L. J. 605.

The court's opinion refers to the Restatement, Second, Torts, and states the rules therein set forth are confirmed in our decisions. I

agree. The broad duty owed licensees under § 341 (1965) is that a possessor of land is subject to liability to his licensees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, (a) he should expect that they will not discover or realize the danger, and (b) they do not know or have reason to know of the possessor's activities and of the risk involved.

As indicated, both defendants concede they were negligent, and it is eminently clear that a little five-year-old girl would not discover or realize the dangers involved by going through an unlocked door to the roof of a five-story building. In my opinion, the burden is upon the occupier of land, no less than on anyone else, to conduct himself as a reasonable man under the circumstances, on his own land as well as in other places. (*Montague v. Burgerhoff*, supra.) Except in those cases where reasonable men could not differ, the question of whether the defendants conformed to that standard is one for a jury. See authorities cited in my dissenting opinion in *Ralls v. Caliendo*, 198 Kan. 84, 89, 422 P. 2d 862.

Before concluding, I feel compelled to say it is right and proper for an occupier of land to be liable to a trespasser only for wanton or willful injury. However, it is contrary to reason and justice to apply the same rule to a licensee without due consideration of the facts and circumstances of the case. Under some circumstances there may be a duty of ordinary care to avoid injury to a licensee where, as here, the little girl was impliedly granted permission to use the premises, and the question of ordinary care is one of fact for a jury. While our decisions apply the common-law distinction between an invitee and a licensee in determining the duties of care owed them by occupiers of land, the reason for such distinction no longer exists. Kansas has carefully preserved flexibility in the common law (K. S. A. 77-109), and the conditions and wants of the people of this state require the abolition of such a distinction and impose upon occupiers of land with respect to invitees and licensees, a single duty of reasonable care under all the facts and circumstances in a particular case. In *Kermarec v. Compagnie Generale*, 358 U. S. 625, 3 L. Ed. 2d 550, 79 S. Ct. 406, the Supreme Court of the United States said:

". . . In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to de-

lineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. . . . Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.'" (pp. 630, 631.)

The Restatement of the Law of Torts, Second, § 341, is in accord with the reasonable care standard stated above. The common-law classifications are themselves judicial creations capable of being set aside by judicial action where their purpose is no longer served.

In my judgment, the district court erred in entering summary judgment in favor of the defendants. I would reverse the judgment with directions to proceed with the trial of the case to a jury under appropriate instructions.