No. 45,541

H. Duckers, *Appellee*, v. T. Lynch, *Appellant*.

(465 P. 2d 945)

Opinion filed March 7, 1970.

*Leonard O. Thomas*, of Kansas City, argued the cause, and *Lee E. Weeks*, of Kansas City, was with him on the brief for the appellant.

*J. W. Mahoney*, of Kansas City, argued the cause, and *David W. Carson*, of Kansas City, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'Connor, J.: Thomas Lynch (defendant) has appealed from a $12,500 judgment entered on a jury verdict in favor of Harry Duckers (plaintiff) for personal injuries Duckers sustained as the result of a fall on November 16, 1964, while a social guest in Lynch's home.

Although several points are raised, the pivotal question which disposes of the appeal is whether the trial court erred in failing to sustain defendant's motion for directed verdict based on the insufficiency of evidence to establish liability on the part of defendant.

The fall climaxed a day of social activity which commenced with Duckers attending a Saturday afternoon football game at K. U., followed by a seven o'clock dinner party, in company with his wife, at the home of friends. The guests remained after dinner for quite some time and, with a bartender attending to their libational needs, spent the ensuing hours conversing, and singing songs. During the evening one of the Duckers' sons came and asked to use the car, and Mrs. Duckers left the party with him. Duckers, however, re-

mained at the party until after midnight, when he left with his neighbors, Dr. and Mrs. Paul Carpenter. After the trio got into the Carpenter automobile one of them suggested, "Let's go by and talk football with Tom," and they drove to Lynch's house. Duckers, Lynch and Carpenter had been good friends for several years and thought nothing of dropping in, on occasion, at one another's home late at night.

Upon the group's arriving at the Lynch residence, Dr. Carpenter knocked on the door. When the Lynches answered the knock at the door their appearance strongly suggested they had already retired, but they invited the three to come in. The hosts and their guests then walked through the living room and along a hallway to a combination kitchen-family room at the back of the house where they all sat down at a large, round table and began to chat. Lynch inquired, "Would you all care for a drink?" and his guests replied, "That would be fine."

While Lynch was mixing the drinks, and the others were engaging in conversation, Duckers, without saying anything to or asking direction of anyone, got up from the table to go to the bathroom. He thought he knew where the bathroom was, having been in Lynch's home and having been to that particular bathroom before.

The door to the bathroom was identical to the door to the basement. Both were side by side (about one foot apart) on the north wall of the hallway between the kitchen and living room. The hallway was described as being about three feet in width and relatively short, without doors at either end. The bathroom door opened out into the hallway; the other, into the stairway down to the basement. Both doors were closed, but neither was hooked or locked, nor was there a light burning in either the bathroom or the basement. Duckers walked from the table, down the hallway— a distance of about twenty-two feet—past the bathroom door, turned the knob of the other door, and stepped into what he discovered too late was the stairway to the basement. Although there was no light in the hallway, the area was sufficiently illuminated from lights in the living room and the kitchen so that Duckers was able to see the door he actually opened.

The stairs were wooden, steep, and dark, and descended five steps to a landing, then turned and descended seven more steps to the concrete basement floor. There were no handholds or railings, and no side wall. Duckers hung on to the doorknob with his left

hand, having lost his right arm in a farm accident years ago, and as the door swung around it "bounced him off" and he landed on his feet on the landing, then went over backwards and landed on his feet at the bottom on the concrete floor, breaking his hip. As a result he was hospitalized for thirty days, incurred substantial medical expense, and was unable to return to his job as county agricultural agent until February 1965, and then only on crutches.

About six or eight months prior to Duckers' experience Mrs. Breitenstein, a neighbor of the Lynches, had fallen down the same basement stairs when she, too, attempted to go to the bathroom and opened the wrong door. Luckily she was able to break her fall by grabbing the "doorknobs" with both hands and was not injured. After Mrs. Breitenstein's fall Mr. and Mrs. Lynch talked about putting up handrails on the basement stairs or seeing if there was "some form of a light or something to put there to distinguish the doors." Nothing, however, was done with respect to carrying out these ideas. There also had been several other occasions when meter readers and another neighbor had started through the wrong door.

At the conclusion of plaintiff's evidence defendant offered no evidence but moved for a directed verdict, which was overruled. The motion was later renewed in post-trial proceedings and was again denied.

The case was submitted to the jury under instructions to the effect that plaintiff's status as a social guest was that of a licensee, and the only duty owed by defendant was to refrain from "wantonly or recklessly" injuring him.

Both parties concede that the duty owed plaintiff by defendant was no greater than that owed any other licensee. (See, Ralls v. Caliendo, 198 Kan. 84, 422 P. 2d 862.) Under the law in this jurisdiction an owner or occupier of property owes no duty to a licensee except to refrain from willfully, intentionally or recklessly injuring him. (Smith v. Board of Education, 204 Kan. 580, 464 P. 2d 571; Lemon v. Busey, 204 Kan. 119, 461 P. 2d 145; Roberts v. Beebe, 200 Kan. 119, 434 P. 2d 789; Ralls v. Caliendo, supra; Graham v. Loper Electric Co., 192 Kan. 558, 389 P. 2d 750; Blackburn v. Colvin, 191 Kan. 239, 380 P. 2d 432; Backman v. Vickers Petroleum Co., 187 Kan. 448, 357 P. 2d 748.) Negligent injury of a licensee will not give rise to a claim for relief. A mere licensee takes the premises as he finds them and assumes all risks incident to their condition. (Graham v. Loper Electric Co., supra.)

The explanation usually given by the courts for classifying social guests as licensees is that the guest is expected to take the premises as the host himself uses them, and does not expect, and is not entitled to expect, that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the host does not prepare or take precautions for his own safety, or that of members of his family. (2 Restatement of Torts 2d, § 330, Comment *h*. 3.)

The contrast between the duty owed a licensee and an invitee was sharply drawn in *Graham v. Loper Electric Co.*, supra, by the following language:

"The owner or occupant of premises owes a much higher degree of care to avoid injury to an invitee than to a mere licensee. The owner or occupant of premises is liable to an invitee for injuries resulting from failure to exercise reasonable or ordinary care for the invitee's safety. The duty to exercise ordinary care is active and positive, and no element of wilfullness or wantonness need be present. The inviter has the duty to protect an invitee against any danger that may be reasonably anticipated. The owner or occupant of premises is charged with the duty of exercising reasonable care to keep the premises in reasonabl[y] safe and suitable condition so as to avoid injury to an invitee or of warning an invitee of concealed perils of which the owner or occupant knows or should know by the exercise of reasonable diligence. (*Seymour v. Kelso,* 136 Kan. 543, 16 P. 2d 958; *Thogmartin v. Koppel,* 145 Kan. 347, 65 P. 2d 571; *Glenn v. Montgomery Ward & Co.,* 160 Kan. 488, 163 P. 2d 427; *George v. Ayesh,* 179 Kan. 324, 295 P. 2d 660; *Gardner v. Koenig,* 188 Kan. 135, 360 P. 2d 1107.)" (pp. 561-562.)

Plaintiff based his claim for relief on what he alleged was wanton and reckless conduct of the defendant in the following respects: (1) In permitting the existence and use of two adjacent doors in the same hallway, one to the bathroom and one to the basement; (2) failure to maintain adequate lighting in the hallway; (3) failure to install a light or other device on the basement door; (4) failure to light the basement steps; (5) failure to install a railing on the basement steps; (6) knowledge that the condition of the premises was dangerous; and (7) failure to warn plaintiff of said dangerous condition.

When describing conduct as being either "wanton" or "reckless," we discern little or no difference to be attached to the meaning of these terms. In either case we are dealing with conduct which is something more than ordinary negligence, yet something less than willful or intentional injury. This is demonstrated by the marked similarity found in the commonly accepted definitions. To con-

stitute "wantonness," the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result. (*Saunders v. Shaver,* 190 Kan. 699, 378 P. 2d 70.) As characterized in *Blackburn v. Colvin,* supra, for conduct to be "reckless," it must be such as to evince disregard of or indifference to consequences, under circumstances involving danger to life or safety of others, although no harm was intended. (Also, see, PIK 3.02 and 3.03 and comments thereto.)

Our recent decision in *Ralls v. Caliendo,* supra, is of compelling significance inasmuch as the facts are comparable in many respects. Mrs. Ralls, an elderly relative of the Caliendos, slipped on some water on the floor near the refrigerator and injured herself while a guest in the Caliendos' home. The evidence disclosed that prior to the accident, as well as on many other occasions, ice cubes which had fallen on the floor near the refrigerator were kicked under it by different members of the family and left to melt—the water, in turn, running out over the floor. The Caliendos were aware of this practice and knew there had been water on the floor in this same area many times, not only from melted ice cubes, but from the spilled contents of their dog's water pan which was located near the refrigerator. Mrs. Caliendo was cognizant of the fact there was water on the floor in the area before Mrs. Ralls fell, but did not stop to mop because she was preparing Christmas dinner. Mr. Caliendo, who had previously fallen in the same place because of water on the floor, described the appearance of the area as a "dangerous condition."

This court, in affirming the trial court's sustaining of defendants' motion to dismiss at the close of plaintiff's evidence, said:

"The plaintiff makes no claim the defendants were guilty of willful or wanton negligence; it is claimed only the factual circumstances were such the plaintiff was entitled to a jury's consideration whether the defendants' conduct was reckless, that is, whether it was such as to evince disregard of or indifference to consequences involving danger to the plaintiff. It is argued the defendants had created the condition or circumstances and knew of its presence; that they failed to momentarily warn the elderly plaintiff of its presence or assist her in any manner prior to her fall, notwithstanding the fact one of them had previously fallen in the area for similar reasons, and it was considered a dangerous condition.

"Based upon the standard of proof announced in *Blackburn,* supra, we are of the opinion the evidence was not such as to authorize a jury to consider the defendants' acts or omissions as that *entire want of care which would raise the presumption of a conscious indifference to consequences, justly characterized as reckless*. It is unnecessary to restate the evidence. At most, the defendants' conduct constituted nothing more than, as the district court concluded, ordinary negligence which is not sufficient to permit the plaintiff to recover or to have her cause submitted to a jury." (Emphasis added.) (p. 88.)

Viewing the evidence and all reasonable inferences that may properly be drawn therefrom in the light most favorable to the plaintiff, we are of the opinion the trial court erred in failing to sustain defendant's motion for directed verdict. In short, there was insufficient evidence to establish wanton or reckless conduct on the part of defendant within the context of the rules discussed.

The entire strength of plaintiff's case rests upon the proposition that there lurked upon defendant's premises a dangerous condition of which he was fully aware, and consequently, he had the duty to make the premises safe, or at least warn his guests of the condition. Breach of the duty in either respect, plaintiff argues, constituted wanton and reckless conduct, rendering the defendant liable. There are several reasons which make plaintiff's argument untenable.

The various acts plaintiff claims defendant failed to do in making the premises safe, as well as his failure to warn of a dangerous condition which was known to him, at most were acts of ordinary negligence, which, under Kansas law, do not render a host liable to a guest. Moreover, they were acts of *omission* which by their very nature were *passive* in character. Ordinarily, *passive* negligence cannot amount to willful, intentional or reckless conduct sufficient to enable recovery by a licensee from the owner or occupant of the premises. (*Lemon v. Busey,* supra.)

Plaintiff seeks to support his contention that defendant was under a duty to warn about or make safe a dangerous condition by relying on the rule of general liability of property owners to licensees as set forth in 2 Restatement of Torts 2d, § 342. In essence, under this rule, when a host knows or has reason to know of a condition that involves an unreasonable risk of harm to a guest, the host is under a duty to exercise reasonable care to make the condition safe, or to warn the guest of the condition and the risk involved, if the host has reason to believe the guest does not know or will not discover the dangerous condition. As made plain by Mr. Justice Fatzer in his dissenting opinion in *Ralls v. Caliendo,* supra, the

majority of this court has declined to accept the higher duty imposed on a host by the Restatement rule. The law in this jurisdiction imposing a duty upon the owner to exercise reasonable care in keeping the premises in a reasonably safe and suitable condition, or of warning of concealed perils, extends to invitees, not to licensees or social guests. (See, *Graham v. Loper Electric Co.,* supra, and cases cited therein.)

Furthermore, plaintiff's argument, even if otherwise feasible, presupposes the condition of defendant's premises was such as to constitute a concealed danger, or at least posed a condition involving an unreasonable risk of harm. We cannot agree.

In those jurisdictions taking the more charitable view toward a guest, the host has a duty to warn only where the condition causing injury or the risk therefrom is so hidden that the guest cannot reasonably be expected to learn of it for himself. (Anno. 55 A. L. R. 2d 525 § 3.) As stated by some authorities, the host is under a duty to warn a guest of any concealed danger, pitfall or trap from which the guest could not avoid injury by reasonable care and skill. (*Johnson v. Goodier,* 182 Neb. 172, 153 N. W. 2d 445; *Baer v. Van Huffell et ux,* 225 Ore. 30, 356 P. 2d 1069.) Hence, a host is under no duty to give warning of a condition which should be obvious to the guest.

Defendant had moved into his present home in 1953. The door to the basement, the stairs, and the landing were in the same position and general condition at the time he moved in as when plaintiff's fall occurred. Defendant had installed new lighting in the kitchen, but there never had been a light in the hall, inasmuch as the area was illuminated from lights in the kitchen and the living room. For all practical purposes, the condition of defendant's home, and the area with which we are concerned, had remained the same since 1953.

Ordinarily, a condition in a home which consists of an unlocked door opening into a basement stairway is not a dangerous condition amounting to a pitfall or trap which would require a warning from the host to a guest. (See, *Johnson v. Goodier,* supra; *Baer v. Van Huffell et ux,* supra; *Tempest v. Richardson,* 5 Utah 2d 174, 299 P. 2d 124.) Nor do we believe under the facts here there was anything so deceptive as to present a concealed danger by two similar doors being located side by side and leading to different destinations. Basements with inside stairs closed off by a door at an upper

level are commonly found in residences. General knowledge should warn every guest in a home that such a stairway may exist. By the same token, bathrooms are normally closed off from adjacent areas by a door. The exercise of reasonable care for one's own safety would require a guest, on opening any door, to investigate before stepping across the threshold.

By plaintiff's own testimony, he had been to the bathroom on a prior occasion when in defendant's home, and thus, was familiar with its general location. He told no one where he was going, and there is no evidence defendant was aware he intended to go to the bathroom. Confronted by two doors as he proceeded on his journey, plaintiff was put on notice that only one could lead to the bathroom. Plaintiff obviously thought he knew which was the proper door. Unfortunately, he was mistaken. But his misfortune was not due to the existence of a pitfall or trap fostered by the two similar doors; rather, it was the result of an unwise reliance upon his own memory. Plaintiff simply allowed self-assurance to displace caution.

Plaintiff's effort to support his position by our decision in *Blackburn v. Colvin,* supra, is of no avail. In the first place, the question of whether the evidence was sufficient to justify submission of the case to the jury on the issue of defendant's willful, intentional reckless conduct was not squarely before this court because of a defective notice of appeal. Secondly, plaintiff's contention that this court specifically approved an instruction stating that failure to warn might be considered an *element* of willful, intentional or reckless conduct is not substantiated by a careful scrutiny of the decision. That portion of the instruction was not questioned; rather, the part containing words referring to whether defendant knew "or should have known" of the dangerous condition created by him was the bone of contention.

In view of our conclusion that the evidence was insufficient to make out a submissible case, consideration of other points is unnecessary.

The judgment is reversed with directions to sustain the motion for directed verdict and enter judgment for the defendant.

SCHROEDER and FROMME, J. J., not participating.

FATZER, J., dissenting: The court concedes the defendant's conduct constituted acts of ordinary negligence. I cannot agree the

negligence involved was passive in character. In my judgment, it was negligent conduct of active operation of the premises, or the management of the property, which subjected the plaintiff to increased hazards and dangers, and may be termed as an overt act of negligence. (*Montague v. Burgerhoff*, 150 Kan. 217, 92 P. 2d 98.) There was knowledge on the part of the defendant of the dangerous condition which amounted to a pitfall or trap, and a failure to warn. See my dissenting opinion in *Ralls v. Caliendo*, 198 Kan. 84, 89, 422 P. 2d 862.